[Crim. No. 29693. Second Dist., Div. Two. Aug. 22, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH JESSE ESPINOZA, Defendant and Appellant.

**COUNSEL**

Hecht, Diamond & Greenfield and Roger Jon Diamond for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

BEACH, J.—After a jury trial, Joseph Espinoza was found guilty of assault with a deadly weapon. (Pen. Code, § 245, subd. (a).) The jury further found that the allegation that he used a firearm pursuant to Penal Code sections 12022.5 and 1203.06 was true.[1]

## Facts:

Appellant Espinoza fired a shot at Roddrick Devious Johnson and struck Johnson in the arm. Appellant's defense was that he was seeking to arrest Johnson on a fleeing felon theory; that is, he believed Johnson had brought harm to Espinoza's employees, had robbed Espinoza's place of business, and had broken glass at that location.

Espinoza owned a photo studio where Dianna worked. She lived with Johnson. Johnson went to the studio to contact Dianna about having left his home. Johnson asked Dianna what was happening and she looked shocked. He wanted her to come with him, but she shook her head and stayed where she was standing. Johnson then grabbed Dianna; Vickie, who was standing in a corner with her revolver, said that Dianna was not going anywhere. Johnson later grabbed Dianna's arm and pulled her toward him. Although three of the other employees tried to catch Dianna, she and Johnson hit the side of the door. Dianna hit her leg or side on the glass in front of the office. She broke the window. Johnson denies saying that he was going to rob the place or that he scratched Dianna or poked her in the chest.

Someone telephoned appellant and Johnson left the studio as fast as he could. However, he wanted to talk to Dianna, so he stopped at the telephone booth at a gas station 15-20 minutes later. Johnson saw a car pull up and saw appellant leaning over and clicking his pistol. Johnson ran away; he heard one shot and ran more. He heard a second shot, and then a third shot hit Johnson in the right arm. Appellant ran over and said that he did not want anything mentioned about his business; he threatened Johnson's mother and said that Johnson was supposed to go along with a robbery story. The police arrived, handcuffed Johnson, and charged him with robbery.

The trial court sustained an objection to a question regarding the probationary status of Johnson on the date of the incident.

---

[1]The original information had charged Espinoza with assault by means of force likely to produce great bodily injury with intent to commit murder. (Pen. Code, § 217.) It was later amended to charge assault with a deadly weapon plus use of a firearm.

The owner of a business near the gas station testified that he was at work in his office when he heard about three gunshots. He saw appellant running down the driveway to the alley, yelling at someone to stop; appellant had a gun in his hand. He later saw appellant holding Mr. Johnson at gunpoint. Appellant told this man to call the police. Appellant said that Mr. Johnson had tried to rob his place.

Dianna Russell testified that Johnson beat her up when she lived with him and that she was in fear of him. According to her story, Johnson came to Suzette's Studio on February 28 and threatened to kill her; he yelled at her, pushed her, poked her in the chest, and said that she owed him money. He then grabbed her and pulled her into the glass window, causing her knee to swell; in addition, he scratched her. She testified that Johnson had hit her face and injured her leg when she lived with him, although she admits not telling either the prosecuting attorney or an officer about this incident.

Vickie Palmer, Dianna's roommate, and Danny Lugo both testified that on the day in question Johnson told Dianna that he would have her in the cemetery in three days. Lugo additionally testified that Johnson threatened him and said that he had in mind to rob the place. Lugo yelled to appellant when appellant drove up, "There is [sic] [he] goes, Joe, and he tried to rob the place." He made a robbery report to the police that afternoon, but Lugo admitted at trial that he fabricated the first story he told the police. Estella Juarez[2] testified that she called appellant and told him Johnson had hurt Dianna and broke the window. When appellant pulled up, Lugo yelled that Johnson had tried to rob the place. Miss Juarez testified that she had not seen Johnson try to steal anything. While she thought that Johnson was angry and she would not put it past him to rob the place, she did not see him steal anything or punch anyone.

Appellant testified in his own behalf that on February 28 he received a call from Estella Juarez regarding an incident at his studio. Johnson was there causing a commotion, threatening, and being violent. Appellant heard a glass break in the background and was told that Johnson had pushed Dianna through the front plate glass window and maybe appellant should come down. He left immediately and arrived at the

[2]Estella and Stella are two spellings of the same name, used in different parts of the transcript.

studio about 15 minutes later. Danny Lugo shouted that Johnson tried to rob the place and indicated the direction Johnson had gone. Appellant chased after Johnson and saw him by the phone booth. Appellant got out of his car and twice yelled for Johnson to stop. He fired one shot into the air and struck Johnson with one shot. He testified that he is an expert shot and did not intend to kill Johnson. He denies threatening Johnson's mother. He knew Johnson was violent and had a gun and that he was on probation for shooting. Dianna had previously told him that Johnson had used a gun.

## CONTENTIONS ON APPEAL:

█ Defendant makes numerous contentions on appeal. The principal one dispositive of this appeal is that the trial court erred in prohibiting cross-examination of Johnson concerning his probationary status.

## DISCUSSION:

We agree with defendant and we reverse the judgment. During cross-examination of the principal prosecution witness, defense counsel asked, "Mr. Johnson, isn't it true, sir, that on February 28, 1976, the date of this incident you were on probation for—" The prosecution's objection to that question was sustained. Defense counsel cannot use a prior misdemeanor conviction to impeach a witness' credibility. (*People* v. *Lent,* 15 Cal.3d 481, 484-485 [124 Cal.Rptr. 905, 541 P.2d 545].) However, a witness' probationary status may be used to show his potential bias or prejudice based on concern of jeopardy to his probation. (*Davis* v. *Alaska,* 415 U.S. 308, 311 [39 L.Ed.2d 347, 351, 94 S.Ct. 1105]; *People* v. *Lent, supra,* 15 Cal.3d at p. 485.)

Appellant herein justified his conduct by arguing that he was arresting a fleeing felon. He justifies use of deadly force by asserting the felony committed is one that threatens death or great bodily harm. (*People* v. *Wild,* 60 Cal.App.3d 829, 833 [131 Cal.Rptr. 713]; *People* v. *Piorkowski,* 41 Cal.App.3d 324 [115 Cal.Rptr. 830].)

Penal Code section 837 provides:

"A private person may arrest another:

". . . . . . . . . . . . . . . . . . . . . .

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

While Johnson's version of the incident includes a tug at Dianna Russell, causing her accidentally to hurt her knee on the glass window, the defense version is that there was a violent struggle between Johnson and Dianna and that Johnson committed a felony that threatened great bodily injury at that time.[3]

The conditions of Johnson's probation included that he not use or threaten to use force or violence on any person. He would therefore have a logical reason to tell the police that he had not used or threatened to use force on Dianna Russell at Suzette's Studio. Appellant should have been permitted to inquire into Johnson's probationary status at the time of the offense and at the time of trial. Failure to allow that inquiry constitutes prejudicial error.

Several issues raised by appellant most likely will not be at issue on retrial, so in light of the reversal we will not discuss the issues of prosecutorial misconduct, bailiff's misconduct, and the probation and sentence hearing. Because of the basis of our reversal, it is likely that other more critical issues will not again be present if there is a retrial. These include (a) admission or exclusion of evidence about Johnson's past conduct and defendant's lack of gun permit, and (b) jury instructions. Therefore, we do not discuss those issues either.

The judgment is reversed.

Fleming, Acting P. J., and Compton, J., concurred.

---

[3] Appellant also argued that he thought a robbery had taken place and was justified on those grounds in trying to make a citizen's arrest of Johnson. However, it is undisputed that nothing was taken from the premises and that no robbery occurred. On appeal, as at trial, appellant further argues that Johnson had committed violations of Penal Code sections 265 and 266b in his relationship with Dianna and that appellant was therefore justified in arresting him on those grounds. However, appellant himself did not justify his arrest on those grounds.