[Crim. No. 30461. Second Dist., Div. Three. Jan. 25, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL NATHANIEL ALLEN, Defendant and Appellant.

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Allison B. Stein, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, and Edward T. Fogel, Jr., and Vincent J. O'Neill, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FAINER, J.**\*—Appellant, Michael Nathaniel Allen, appeals from a judgment following a jury conviction of robbery in the first degree (Pen. Code, § 211).[1] The judgment of conviction is reversed.[2]

---

\*Assigned by the Chairperson of the Judicial Council.

[1] The jury also found the allegations to be true that the appellant Allen used a firearm pursuant to Penal Code sections 12022.5 and 1203.06.

[2] Appellant purports to appeal from the order denying his motion for a new trial. Such order is nonappealable and the attempted appeal therefrom is dismissed. (Pen. Code, § 1237; *People* v. *Henderson* (1977) 19 Cal.3d 86, 90, fn. 3 [137 Cal.Rptr. 1, 560 P.2d 1180].)

## FACTS

Minor, William O., and another young man participated in a robbery of Geraldine Sprechman on August 13, 1976, at approximately 11 p.m. in a lighted area of a parking area in the middle of Vermont Avenue in front of a card casino in the City of Gardena. Mrs. Sprechman, the victim, had a brief opportunity to observe the minor, William O., and the other robbery participant, who was armed with a hand gun, during the few seconds from the time the robbery action commenced until her purse, containing $1,000 in traveler's checks and $400 in jewelry, was taken from her by the minor, William O; she then ran screaming back to the card casino. The victim's husband had been face to face with the man with the gun. When the victim ran back toward the card casino, the two young robbers left the parking lot, running, with the minor carrying Mrs. Sprechman's purse.

Mrs. Sprechman gave the police a description of the minor, including the clothes he wore, and a description of the other man, including his hair ("curly Afro"). The other man was described as being older than the minor but young. Mr. Sprechman recalls that the other man wore dark clothing, wore no cap, and had no beard.

The minor was arrested a short time later in the general vicinity of the place of the robbery. Mrs. Sprechman's purse was found nearby and nothing was missing from it.[3] Mr. and Mrs. Sprechman were taken by police officers to the place of the arrest and they identified the minor as one of the robbers.

The minor was taken to the Gardena police station and placed in a juvenile holding cell. The minor's mother, Mrs. Kathleen O., came to the police station and spoke with her son.

On the basis of information supplied by the minor and his mother, an arrest warrant was issued and appellant Allen was arrested in his home at approximately 5 a.m. on August 14, 1976, as the other robbery suspect. The arresting officers searched the bedroom area where appellant was arrested and found no gun.

Appellant was incarcerated in the Gardena jail where he had a conversation with two prisoners, Raymond Beck and Jorge Feliciano.

---

[3] The minor had been seen running with a purse in his hand shortly before he was apprehended by a police officer.

Beck and Feliciano later told a Gardena police officer at the jail that appellant admitted his participation in the robbery with a minor accomplice who was now trying to "stick the rap" on him. Appellant was reported to have said that he would hope to avoid identification by changing his hair from curls to "combed straight back." Appellant is also reported to have said that he hoped to get his sister to talk the minor into "taking the rap." The statements of Beck and Feliciano were tape recorded and the tape was played for the jury.[4]

The minor testified at the trial for the prosecution that the robbery was appellant's idea; that appellant had the gun; and that the appellant participated in the robbery. On cross-examination, in an attempt to impeach the minor and to show a motive for untruthful testimony, appellant was permitted to elicit from the minor that the disposition phase of his juvenile case arising out of the Sprechman robbery was still pending. Appellant was not permitted to cross-examine the minor about two other pending juvenile charges against him involving recent robberies.

Mrs. Kathleen O., minor's mother, testified for the prosecution that appellant's sister told her, after appellant was arrested, that she, the sister, would lie in court to help appellant. This was denied by appellant's sister who testified that Mrs. O. wanted appellant to tell the police that he was with the minor in the robbery. During the prosecution's rebuttal, Mrs. O. stated that appellant's sister told her that appellant was "on parole."[5]

Appellant testified, denying his participation in the robbery and denying that he told Beck and Feliciano, in the Gardena jail, that he did participate in the robbery. He does admit that he told these men, when asked, that he was being charged with a robbery. Appellant testified that he and the minor did not get along very well. Appellant denied stating to the other prisoners that he changed his hair style to avoid identification. Appellant testified that he was with his sisters during the entire evening of August 13, 1976, although he did see the minor around 8:30 and he

---

[4] At the trial, appellant sought to have suppressed the statements of Beck and Feliciano because the arrest warrant was based on the statement of an unreliable informant, to-wit, the minor, and the statements were, therefore, inadmissible as being "the fruits of the poisoned tree." This issue, not a contention on appeal, is without merit. (*People* v. *Hall* (1974) 42 Cal.App.3d 817, 822 [117 Cal.Rptr. 228]; see also *People* v. *Ramey* (1976) 16 Cal.3d 263, 270-277 [127 Cal.Rptr. 629, 545 P.2d 1333], prohibiting warrantless arrests of persons in their houses in the absence of exigent circumstances.

[5] Appellant's motion for a mistrial for this alleged prejudicial statement was denied.

did see Mrs. O. around 11 p.m. Testimony of appellant's sisters corroborated his testimony.

The identification testimony of Mrs. Sprechman and of her husband as to the appellant was marginal, but the appellant had a beard at the time of trial.[6]

## CONTENTIONS OF APPELLANT

The prosecution admits that ". . . the testimony of [Mrs. O.] and [the minor], on one hand, and the appellant's cellmates on the other, would be somewhat suspect if either was alone and unsupported . . . ." In this close case, appellant asserts that the trial court committed error in four different instances requiring a reversal of the judgment of conviction.

1. The trial court impermissibly restricted appellant's lawyer from cross-examining the minor,[7] the key prosecution witness, as to the existence of other pending robbery charges. The thrust of this contention of appellant is that he was prejudicially denied the right to present evidence by cross-examination of the minor of a motive to fabricate or other motive from which the jury could infer untruthful testimony.

2. The trial court committed reversible error when it denied appellant's motion for a mistrial after Mrs. O., as a rebuttal prosecution witness, testified that appellant was "on parole."

3. The trial court erred when it gave as a jury instruction CALJIC No. 2.04—efforts by appellant to fabricate evidence—inasmuch as the instruction was not based on evidence and was highly prejudicial.

4. The trial court committed reversible error when it refused to instruct the jury that the issue of an arrest warrant may not be considered

---

[6]The appellant was sentenced to the state prison for a term prescribed by law, less 142 days credit for time served. The judgment states that the appellant was sentenced to imprisonment in the California Institution for Men at Chino. The trial court does not have the jurisdiction to specify detention in a particular penal institution. (*People* v. *Thomas* (1976) 65 Cal.App.3d 854, 858 [135 Cal.Rptr. 644].) While this reviewing court has the power to correct this error, which appears to be a clerical error because the oral pronouncement of the sentence simply directed that the appellant be committed to the state prison system for the term prescribed by law, the issue is moot, as we reverse the judgment of conviction.

[7]We find the failure to permit cross-examination of the minor and his mother, Mrs. O., was reversible error.

as evidence of guilt after the jury questioned the court about the procedure for the issuance of an arrest warrant.

 *The Trial Court Erred In Limiting*
*Cross-Examination On the Issue Of*
*The Motive To Fabricate Or To Give*
*A Truthful Testimony*

 A party can offer evidence, by proferred extrinsic evidence or by cross-examination of a witness, to attack the credibility of a witness, if such evidence tends reasonably to establish that the witness has a motive to fabricate, or some other motive, that tends to cause the giving of untruthful testimony, even though there may be no reasonable basis for the existence of such a motive.[8] (See *People* v. *Lent* (1975) 15 Cal.3d 481, 484-485 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Espinoza* (1977) 73 Cal.App.3d 287, 291 [140 Cal.Rptr. 846]; *People* v. *Brown* (1970) 13 Cal.App.3d 876, 883 [91 Cal.Rptr. 904], disapproved on other grounds in *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 716 [135 Cal.Rptr. 392, 557 P.2d 976]; Jefferson, Cal. Evidence Benchbook (1972) § 28.8(c); Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, §§ 1229, 1231, and 1977 supp. thereto.)

This evidence, offered to show a bias, a prejudice or a motive to fabricate, is evidence of a state of mind. (*People* v. *Brown, supra*; Jefferson, Cal. Evidence Benchbook, § 28.8.) The minor must have had the expectation, the belief, the state of mind, that he was to

---

[8]Appellant bases this contention on an alleged violation of article I, section 15, of the California Constitution and the Sixth and Fourteenth Amendments to the United States Constitution, on the grounds that appellant was denied effective cross-examination and therefore his constitutional right of confrontation, citing *Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105], where the trial judge was held to have improperly restricted cross-examination of a prosecution witness on his probationary status as a juvenile delinquent. The United States Supreme Court said that the defendant should have been allowed to show the witness' susceptibility to undue pressure and added: "We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (415 U.S. at pp. 316-317 [39 L.Ed.2d at pp. 353-354]; see also *Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748].) It is necessary to recognize that a denial of this right of cross-examination is not only treated by the courts and legal scholars as a violation of the constitutional right of confrontation but also as a denial of the right, under the laws of evidence, to show the existence of bias, interest or motive to fabricate to attack the credibility of a witness either by cross-examination or by extrinsic proof. (*People* v. *James* (1976) 56 Cal.App.3d 876, 886-887 [128 Cal.Rptr. 733].) Under either approach, the trial court's refusal to allow appellant to cross-examine both the minor and his mother on the other robbery offenses in order to show a motive to fabricate or to show the susceptibility of those witnesses to undue prosecution pressure was prejudicial error.

receive prosecution immunity, or a lighter juvenile disposition in connection with the other two robbery charges as well as the current robbery charge—the Sprechman robbery—for the motive evidence to be meaningful. This state of mind was necessary to show a motive for untruthfulness or undue prosecution pressure. This expectation of leniency had to be the minor's state of mind at the time he was in custody and told the Gardena police officers that the appellant was the other participant in the robbery and at the time he testified at trial. It must be emphasized that there is no requirement that the minor witness' motive to fabricate had a reasonable basis for its existence. (Jefferson, Cal. Evidence Benchbook, § 28.8.) At the time the minor identified appellant as the other robbery assailant on August 13, 1976, he probably believed that he would have three pending juvenile matters involving three separate alleged robberies, one of April 15, 1976, one of June 15, 1976, and now one of August 13, 1976. At the time of trial of appellant, when the minor testified for the prosecution, he knew that no charge had been filed on the June 15, 1976, occurrence[9] and that there was to be a dismissal of the April 15, 1976, charge and a disposition of the August 13, 1976 charge on December 28, 1976, the juvenile court disposition hearing date for the Sprechman incident. This hearing date was set for a time after the minor's testimony in the appellant's case.

It is not relevant to the state of mind of the minor, at the time of his arrest, that his mother had not told him of the original promise made by a Gardena police officer to her that things "would not go hard on William if he revealed the identity of his accomplice" until November 29, 1976, more than three months after the date of the Sprechman robbery. What is relevant is the attitude or state of mind of the minor as to an expectation of leniency on all three robbery charges. The minor could believe that his identification of appellant as his partner in the robbery at the time he was in the juvenile detention immediately after his arrest would benefit him even if no one made a promise of leniency at that time or even if he did not know that such a promise had been made to his mother. The minor could have believed that if he failed to identify someone as his robbery partner after he was arrested on August 13, 1976, he would be facing a more severe punishment on all three robbery charges than on one or even two charges. These were matters that should have been presented to the trier of fact, the jury, to determine the state of mind of the minor and whether there was a motive to fabricate or a susceptibility of undue pressure. At the time of trial, the

---

[9]This charge could have been the subject of a juvenile petition for adjudication under Welfare and Institutions Code section 602 at the time of trial.

minor knew that there was an agreement that one charge of a robbery occurrence of April 15, 1976, was to be dismissed, that there was to be no filing on another charge for a robbery occurrence of June 15, 1976, and a juvenile disposition on the August 13, 1976, robbery occurence. Again, it was a question of fact for the jury to consider the minor's motive to fabricate after permitting appellant, by his lawyer, to cross-examine the minor about his state of mind, his expectation of leniency, his fear that a prior "plea bargain" would not be kept if he testified differently. (*People* v. *Brown, supra,* 13 Cal.App.3d 876, 883.) It was error for the court to restrict the cross-examination as it prevented the appellant from effectively attacking the credibility of a key witness by showing a motive to fabricate.

The respondent seeks to minimize this error by pointing out that the appellant was permitted to cross-examine both the minor and his mother in detail about the fact that there was a pending juvenile disposition hearing for the August 13, 1976, occurrence after the trial. It is true that the jury knew that the minor's juvenile case arising out of the Sprechman robbery had not yet been disposed of, but the cross-examination concerning the minor's participation in three separate robberies was more than merely cumulative. The minor could have reasonably believed his punishment would have been greater for the three charges than for the one. Certainly the minor's mother, Mrs. O., had an expectation of leniency for her son if both he and she identified another assailant on August 13, 1976, and if both he and she testified for the prosecution at the trial. The appellant had the right to show that both the minor and his mother were possibly under greater prosecution pressure because of three recent robbery charges than only one. (*Davis* v. *Alaska, supra,* 415 U.S. 308.)

The respondent's argument that to permit the evidence of the other charges to be received would be prejudicial and contrary to section 787 of the Evidence Code is without merit. ▮ "Evidence of . . . acts, offered to establish bias or improper motive, is *not* made *inadmissible* by Evid C § 787, since the evidence is relevant for a purpose *other than* as tending to prove the witness' character trait. If an act of conduct of a witness is *unequivocal* in pointing to his having a bias or improper motive, evidence of the act is admissible to prove the witness' bias or improper motive as an impeaching fact under Evid C § 780(f), although the evidence is also relevant as tending to prove a character trait of the witness, but is inadmissible for this latter purpose under Evid C § 787." (Jefferson, Cal. Evidence Benchbook (1972) § 28.8, p. 460; italics in

original.) The evidence of the additional juvenile charges arising out of other robberies could unequivocally and reasonably tend to prove a motive to fabricate.

■ The trial court also erred in refusing to permit appellant to cross-examine the minor's mother about the other juvenile robbery charges. This witness had a strong belief and expectation, based upon her conversation with the Gardena police officer and with members of the prosecutor's office, that there would be leniency given to her son on all three charges.

### ■ The Trial Court Erred In Failing To Grant Appellant's Motion For A Mistrial After A Rebuttal Witness Testified That Appellant Was "On Parole"

The respondent, in an effort to rebut the alibi testimony of Beverly Allen, appellant's sister, called Mrs. O. as a rebuttal witness expecting her to testify that the sister had stated her willingness to lie in court for appellant. In response to a general question as to what Beverly Allen had said she would testify about in court, Mrs. O. stated: "Well, she stated that Michael was on parole and he couldn't stand another beef."

Evidence that a witness, including a testifying defendant in a criminal case, has been convicted of a felony may be admissible, under limited circumstances, when offered to attack the witness' credibility.[10] The respondent was not offering evidence of appellant's parole status in order to impeach him as the parole was the result of a prior juvenile adjudication which cannot be deemed a conviction of a crime for any purpose. (Welf. & Inst. Code, § 203; *T.N.G.* v. *Superior Court* (1971) 4 Cal.3d 767 [94 Cal.Rptr. 813, 484 P.2d 981].)

The only question to be determined on appeal is whether the trial court cured the impropriety of the statement by ordering the volunteered answer stricken and immediately admonishing the jury to "disregard it completely, as if it were never said."

■ A jury is presumed to have followed an admonition to disregard improper evidence particularly where there is an absence of bad faith.

---

[10](Evid. Code, §§ 352, 787, 788; *People* v. *Beagle* (1972) 6 Cal.3d 441, 451-454 [99 Cal.Rptr. 313, 492 P.2d 1].) Neither party disputes the general statement of law and it is unnecessary to discuss the operation of the court's discretion under *People* v. *Beagle* and its progeny.

(*People* v. *Sims* (1976) 64 Cal.App.3d 544, 554-555 [134 Cal.Rptr. 566]; *People* v. *McQuiston* (1968) 264 Cal.App.2d 410, 418-419 [70 Cal.Rptr. 531].) It is only in the exceptional case that "the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions." (*People* v. *Seiterle* (1963) 59 Cal.2d 703, 710 [31 Cal.Rptr. 67, 381 P.2d 947].) In a wide variety of decisions there has been a finding of such exceptional circumstances in holding that the court's admonition to the jury was not sufficient to overcome the substantial danger of undue prejudice and of misleading the jury.

This court found reversible error when the defendant was called an "ex-convict" in *People* v. *Ozuna* (1963) 213 Cal.App.2d 338, 342 [28 Cal.Rptr. 663], and when a witness stated that defendant "did time" in San Quentin in *People* v. *Figuieredo* (1955) 130 Cal.App.2d 498, 505-506 [279 P.2d 200].[11]

The finding of exceptional circumstances depends upon the facts in each case. "An improper reference to a prior conviction may be grounds for reversal in itself [citations] but is nonprejudicial 'in the light of a record which points convincingly to guilt. . . .' " (*People* v. *Rolon* (1967) 66 Cal.2d 690, 693 [58 Cal.Rptr. 596, 427 P.2d 196].)

An examination of the record reveals an extremely close case in which the jury had to make its fact determination based upon the credibility of the appellant and his witnesses and on the credibility of the prosecution's witnesses. In the light of these facts, it is reasonably probable that a result more favorable to appellant would have been reached had the prejudicial information of appellant's parole status not been divulged to the jury. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

---

[11]In *People* v. *Stinson* (1963) 214 Cal.App.2d 476, 480 [29 Cal.Rptr. 695], the court held that reference to defendant's parole status by a police officer was improper because of its inevitable implication of a prior criminal record and the "possible tendency on the part of some jurors to convict a defendant not on proof that he committed the offense but because he had a criminal past," and in addition noted (at p. 481) that the "[i]nfluence of the improper statement on the trial and conviction was the same, whether it was deliberate or accidental."

### The Trial Court Did Not Err When It
### Instructed The Jury Per CALJIC 2.04[12]
### Efforts By A Defendant To Fabricate Evidence

Appellant's contention that there is no evidence in the record which justifies the inclusion of CALJIC No. 2.04 in the jury instructions is incorrect. There were numerous evidentiary facts in the record which support the contention of respondent that appellant made positive attempts to fabricate evidence or to improperly influence witnesses' testimony and from said facts the jury could reasonably draw an inference of consciousness of guilt. (*People* v. *Hannon* (1977) 19 Cal.3d 588, 597 [138 Cal.Rptr. 885, 564 P.2d 1203].)

First, there is the testimony of Mrs. O. that on the night of the robbery, appellant had changed his clothes between 11 p.m., when she spoke with him at his apartment, and at the time of his arrest at 4:30 a.m. Police officers had arrested appellant when he was sleeping in his clothes and the early morning change of clothes was, therefore, inferentially done in an effort to suppress evidence.

Second, there was evidence that appellant changed his hair style in an effort to manufacture evidence. Prosecution witnesses Back and Feliciano testified that appellant told them that he wore his hair curled during the robbery and proposed to comb it out later, hoping to avoid identification. Mrs. O. testified that when she went to appellant's apartment at about 11 p.m. he was combing his hair as he answered the door. In this connection, it should be noted that appellant grew a beard between the time of his arrest and the trial.

A third circumstance justifying the instruction was appellant's statement to witness Feliciano that he hoped to convince his juvenile accomplice to say that the appellant had no part in the incident.

While appellant has denied that he made any such statements, there was evidence presented to the jury which justified the court's giving CALJIC No. 2.04 instruction.[13]

---

[12]CALJIC No. 2.04 reads as follows: "Evidence that a defendant attempted to persuade a witness to testify falsely or tried to manufacture evidence to be produced at the trial, may be considered by you as a circumstance tending to show a consciousness of guilt. However, such evidence is not sufficient in itself to prove guilt and its weight and significance, if any, are matters for your determination."

[13]In considering the propriety of giving a similar instruction, CALJIC No. 2.06—on efforts to suppress evidence as showing a consciousness of guilt—the court in *People* v.

 *The Trial Court Did Not Err When It*
*Refused To Instruct The Jury That The*
*Issuance Of The Arrest Warrant May Not*
*Be Considered As Evidence Of Guilt*

At the trial, one of the arresting officers testified that he "drew up the papers for an arrest warrant . . . then went to the judge's house," awakened him at approximately 4 a.m., and obtained a warrant for appellant's arrest. After the evidentiary part of the trial and after the jury was instructed and while the jury was in the courtroom having certain requested testimony read back, one of the jurors, who was not the foreman, asked ". . . when a judge signs a warrant for arrest or search warrant, what kind of a discussion [does] he . . . [have] . . . with a representative of the D.A. or the police officer or if he just signs it or it's presented to him or . . . [does] he asks [*sic*] questions?" The court refused to answer that question for the juror. The appellant, citing Penal Code, section 1138,[14] contends that the trial court committed error in the manner in which it dealt with the juror's question. He asserts that the question "clearly implied" that the jury suspected that appellant had been found guilty by another judge in issuing the arrest warrant and that the requested instruction was the type of general principle of law that the court would have been required to give upon request as part of the body of instructions. The appellant wanted the court to instruct the jury that the issuance of an arrest warrant could not be considered as evidence of his guilt. The court refused this request and informed the juror that he could not answer the question and told the jurors that their decisions must be "based upon the evidence and the testimony before you."

The jury had already been instructed under CALJIC No. 1.00 as follows: ". . . You must not be biased against a defendant because he has been arrested for this offense, or because a charge has been filed against

---

*Hannon, supra,* 19 Cal.3d 588, 597 held that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference. The determination of whether facts existed in the record of appellant's attempt to fabricate evidence from which a jury can infer a consciousness of guilt on the part of the appellant is a question of law. While the record supports such facts, a consciousness-of-guilt instruction probably should not be given in a close case on the basis of disputed or suspected facts.

[14]Penal Code section 1138 is as follows: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

him, or because he has been brought to trial. None of these facts is evidence of his guilt and you must not infer or speculate from any or all of them that he is more likely to be guilty than innocent."

We find this to be a sufficient answer to the juror's question and no further instructions were necessary. Certainly it was not necessary to give the jury an additional instruction about the manner in which arrest warrants are issued or that an arrest warrant could not be considered as evidence of guilt. While it may have been preferable for the court to have reread CALJIC No. 1.00 in response to the question, in refusing to answer the juror's question and instructing the jury to decide the case on the evidence before them, the trial court provided the jury with adequate guidance in this case. (Cf. *People* v. *Butler* (1975) 47 Cal.App.3d 273 [120 Cal.Rptr. 647]; *People* v. *Kageler* (1973) 32 Cal.App.3d 738, 746-747 [108 Cal.Rptr. 235].)

### The Trial Court's Error Was
### Prejudicial Requiring Reversal

■ The error of a trial court in refusing to permit cross-examination of the minor and of his mother, Mrs. O., as to the other two robbery charges in order to show a motive for fabrication or untruthful testimony and the refusal of the trial court to grant a mistrial after Mrs. O., on prosecution's rebuttal, had accidentally referred to the fact that the appellant was on parole were prejudicial and require a reversal. (See *People* v. *Watson, supra,* 46 Cal.2d 818, 836.) As already mentioned this was a close case in which the credibility of the prosecution's witnesses and the credibility of the appellant and his witnesses were the key factors. The appellant was not arrested at the scene of the crime, no stolen goods were found in his possession, the gun was not found and the identification evidence by the victim and her husband was not convincing. The case essentially became a contest between the credibility of the prosecution's witnesses and the credibility of the appellant and his witnesses. In refusing to allow appellant to inquire into a motive for fabrication as to both minor O. and his mother, the trial court prevented the trier of fact, the jurors, from considering evidence that might have substantially affected the credibility of these two prosecution witnesses. In permitting the case to go to the jury after the parole status of the appellant had been accidentally disclosed to the jury, the trial court permitted the jury to hear improper prejudicial information that could have had a substantial effect upon the credibility of the appellant's case. The conviction resulted from a trial in which the essential rights of the

appellant were disregarded or denied. Had the appellant been able to present evidence as to the motive of fabrication and the jury not heard the damaging evidence about appellant's parole status, it is reasonably probable that a result more favorable to the appellant would have been reached. Under such circumstances a reversal is mandated. *(People* v. *Watson, supra.)*

The judgment is reversed.

Allport, Acting P. J., and Potter, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 23, 1978.