Filed 10/20/14  P. v. Constancio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ALFREDO CONSTANCIO,<br><br>        Defendant and Appellant. | C074474<br><br>(Super. Ct. No. 11F03372) |

Defendant Jose Alfredo Constancio appeals following a jury trial in which he was convicted of two counts of sodomy with a child 10 years old or younger and two counts of oral copulation with a child 10 years old or younger in violation of Penal Code section 288.7, subdivisions (a) and (b).  On appeal, defendant contends the prosecutor committed prejudicial misconduct warranting a mistrial when, in contravention of a prior court order, she elicited inadmissible evidence from a testifying detective about items allegedly belonging to defendant, and also contends counsel was ineffective for failing to object

1

when the trial court's admonishment to the jury was incomplete. Respondent argues the prosecutor complied with the trial court's orders, and even if improper testimony was elicited, the trial court cured the error by striking the testimony and admonishing the jury. We conclude that though the prosecutor did improperly elicit testimony in violation of the trial court's order, defendant suffered no prejudice because the trial court immediately and effectively instructed the jury to disregard the testimony and because it is not reasonably probable defendant would have achieved a better result in the absence of the objectionable testimony. Additionally, the parties agree the abstract of judgment must be corrected because it does not accurately reflect the imposed sentence. We concur. Therefore, we affirm the judgment and order the abstract of judgment corrected.

FACTS AND PROCEEDINGS

In early 2011, six-year-old Hailey W. was living with her family (mother, siblings and stepfather) at her stepgrandmother's house. Defendant also lived there, in a garage apartment. During this time, Hailey was occasionally left in defendant's care, and she reported that sometimes when they were alone, defendant would orally copulate and sodomize her. About that time, Hailey was diagnosed with oral herpes in the genital area, an uncommon affliction in children that may be acquired through oral contact with the genital region.

At first Hailey refrained from reporting the abuse because defendant told her she would be in trouble if she told anyone. However, Hailey eventually reported the abuse to her aunt, who told Hailey's mother. Hailey's mother did not report the abuse to the police because she feared intervention by child protective services. By then, both defendant and the family had moved, and the abuse had stopped. Thereafter, Hailey also informed her father of the abuse. He immediately informed the police, who interviewed Hailey. Hailey also underwent a physical examination which did not reveal any trauma;

2

not an unusual result in children who are sexually abused. Hailey also described the abuse during SAFE (sexual assault forensic examination) interviews and at trial.

The specific acts of abuse recounted by Hailey included the following: defendant told Hailey he liked her as a girlfriend and wanted to have babies with her. He repeatedly kissed her, asked her to shower with him, and placed his penis, which she referred to as his "D word," in her behind. Once, while defendant had Hailey watch pornography, he licked her vagina. He also did this on another occasion while Hailey watched television. Defendant had also licked her neck, breasts, and belly button, and had sucked her thumb. He had ejaculated in front of her and had worn her underpants. She also reported that defendant had kissed her older sister Michaela, though Michaela denied it. At trial, Hailey only recounted a single instance of oral copulation and of sodomy. However, the jury also heard Hailey's SAFE interviews, in which she stated defendant had sodomized and orally copulated her on numerous occasions, and heard from other witnesses who recounted Hailey's report of multiple instances of abuse.

During motions in limine, defendant objected to the admission of photographs of items recovered from the house where defendant was arrested. Specifically, defendant argued: "There's an issue regarding some photographs that the prosecution is seeking to introduce as evidence. [¶] In this particular instance, as the Court has been made aware of, there's [sic] some issues regarding a pair of underwear that allegedly belong to Hailey. [¶] When [defendant] was arrested there was a cylindrical device that one can, kind of in layman's terms or whatever, referred [sic] almost like a homemade sex toy. The underwear were [sic] wrapped around this object. [¶] And for obvious reasons the defense is concerned that if and when this object is introduced to the jury it would be unduly prejudicial to [defendant] since there is no indication or allegation that Hailey at any time has viewed or seen the object. [¶] The only relevant part about the object is the underwear themselves. I just don't see how it would be beneficial to introduce the photographs, extensive and numbered photographs, wherein this object is kind of taken

3

apart, including the underwear. [¶] I believe it would be more prejudicial than probative, and for those reasons I would ask that the photos of the object itself not be allowed to be viewed by the jury."

The prosecutor argued the items were probative as corroboration of Hailey's statement, because Hailey had revealed in a forensic interview that defendant had worn Hailey's underwear, and argued that the homemade sex toy with panties wrapped around it was found when defendant was arrested. Hailey identified the panties as hers. A pair of shorts was also located in defendant's possession, and Hailey also identified those shorts as hers. The prosecutor also argued the objects demonstrate that defendant's touching of Hailey was not accidental during horseplay, but was done with sexual intent.

The court allowed the photograph of the panties alone into evidence, but stated that the probative value of the other objects was unclear and that "introduction of this cylindrical object is merely evidence of bad character or perversion," since there was no evidence it was used in any abuse of Hailey. Thus, the court ruled the photographs of those items were inadmissible. The prosecutor attempted to clarify that the court's ruling was limited to the photographs. As that was the only objection before the trial court at the time, the court clarified that its ruling was to exclude all the photographs, except a single photograph of the underwear.

Detective Lawrie testified that sheriff's deputies turned over a bag to him that contained various items that the deputies had recovered when they arrested defendant. When the prosecutor began to examine the witness about the recovery of those items (the photographs of which had been excluded as noted above), defense counsel objected. The trial court conferred with counsel, outside the presence of the jury and witness, about the admissibility of the items recovered, namely a modified swim noodle sex toy, floral underwear, and pink elastic shorts. Defense counsel objected to the detective's testimony based on lack of foundation: "It's regarding foundation, Your Honor. [¶] And looking at the report, there is no indication as to what officer found [the swim noodle], where the

4

item was found, the condition it was found. [¶] And here we are with Detective Lawrie saying . . . [he] came into contact with the Defendant, and the Sheriff's Deputies who arrested him brought over some items. I don't know where those items were found. I don't know who they were found by, or any of those foundational basis [*sic*]. [¶] I would object unless the proper foundation is laid. And then past the foundation, relevance of how and why we should get into these things. [¶] But first and foremost, the foundation. We don't have that foundation for him to be able to testify as to the items, where they were found, what condition they were in, and how they are linked back to [defendant]."

The prosecutor replied that the initial arrest report "indicates that [Detective Lawrie] was given this item by the Sheriff[']s Deputies, and that he was the one who later booked it into evidence, and he was the one that examined the contents inside that bag." "I don't think I--there is [*sic*] any foundational requirements that I have not satisfied in the sense that this is the detective who examined the bag. [¶] He is the one [who] took the photographs. [¶] He is the one that documented the contents of the bag. He can argue chain of custody. I think it goes to its weight but not necessarily its admissibility." She argued there was an identification card bearing defendant's name in the same bag as the swim noodle. She averred that the deputies "went out, picked [defendant] up, arrested him, picked up his property," and turned it all over to the detective.

However, defense counsel argued it was unclear whether the items were already in the bag, or were spread out in the residence and independently collected by the deputies. Defense counsel further argued the items were "suggestive" and "more prejudicial than probative." The trial court sustained the objection and clarified that the detective "can't offer testimony about those items until you lay a foundation of how those items were collected, who they were collected by, how they're associated with the Defendant."

In continued examination of Detective Lawrie, the prosecutor asked whether defendant had identified specific items contained in the bag as his own. After

5

establishing that defendant admitted a pair of shorts in the bag was his and that there was identification with defendant's name on it in the bag, the prosecutor asked where the detective found a pair of panties. The detective responded, "[t]hat was found inside of an item. It was basically a sexual device . . . ." Defendant objected, and the trial court sustained the objection. The court struck the testimony and directed the jury to disregard the response. The prosecutor asked the detective whether the underwear was found in the same bag as the pink shorts defendant had admitted were his, and the detective responded in the affirmative. The prosecutor then asked if the detective confronted defendant with any other items, and the detective began listing them: condoms; "a 'ghost,' which was a sexual device" that is "used for sexual pleasure"; lubricant; coconut oil; condom wrappers; a smoking pipe; and a picture of a little girl. He continued to describe that the underwear "was encased in another item that was wrapped with condoms, a plastic wrapper around an item of, a foam type." At that point, defense counsel objected, and the court excused the jury to hear further argument.

Defense counsel argued the detective's testimony, other than with regard to the underwear and identification card, was inadmissible pursuant to the court's earlier ruling because there was no indication defendant had acknowledged any possession or ownership of any other items. The trial court reproached the prosecutor for inquiring "about matters that [the court] had ruled had no foundation, i.e., the lubricant, the condoms, the photograph of the small child, the narcotics pipe, this sexual device, device referred to as a quote, 'ghost,' " and asked "why the Court shouldn't strike that testimony, admonish the jury and warn you that you're treading on a mistrial for allowing or asking those questions of your witness contrary to a prior Court ruling?" The court explained that "[t]hose matters are unduly prejudicial without a showing that they are connected or associated with the Defendant." The prosecutor argued she had established foundation by showing that defendant admitted ownership of at least one item in the bag

6

and that the other items were relevant to show the sexual nature of the possession of the items.

Both counsel and the trial court discussed their differing interpretations about whether the "bag" the detective received was an evidence bag filled with items seized by the officers or was defendant's bag that already held the items when the officers arrived to arrest defendant. In an effort to ascertain whether the items were found in the bag, the court held a foundational hearing outside the presence of the jury. The detective testified that he received some of the items in a "Ziploc type of bag," and that the bag and other items were in a larger paper bag, but he could not recall if that bag was contained in a backpack or some other type of bag. Nor was the detective aware of where within the house the various items were collected; he was merely told by sheriff's deputies that the items belonged to defendant.

Following the hearing, the trial court addressed the jury: "Before you were excused to the hallway, . . . you heard testimony that when the Defendant was arrested and brought to the Police Station, that certain items were brought to the police station. [¶] The Detective mentioned a narcotics pipe, lubricant, presumably gels or lubricant used for sexual purposes, condom wrappers or condoms, an item referred to as a 'ghost' which was testified or described as a sexual device or something used for sexual pleasure, and a photograph of a small unidentified girl. [¶] Disregard all of that testimony about those items. [¶] There is no testimony, no evidence before you, that any of those items belonged to or were associated with the Defendant in any fashion. [¶] You are not to consider that testimony in any way against [defendant]."

The next morning of trial, the court further instructed the jury: "When I told you to disregard certain testimony where [Detective Lawrie] had described that certain items were collected that were not associated with the defendant, you recall I told you to disregard testimony that had to do with the collection of a narcotic pipe, condoms, lubricants, a photograph of an unknown small girl, and some sort of sexual device that

7

was referred to by Detective Lawrie. [¶] And I told you disregard that testimony and that evidence because there's nothing that demonstrates that it was associated with the defendant in any way. [¶] You may not consider that in your deliberations in any way, and I want to ask you by a show of hands right now, I need your assurance that you will not in any way consider that testimony that I told you to disregard in your deliberations. [¶] How many of you think that perhaps you can't do that, in other words, you think that you're going to go into the jury room and still consider even though I told you don't consider that. [¶] If you feel you can't separate the testimony from my instruction, raise your hand. [¶] All right. For the record, no one has raised their hand. [¶] So I'm going to ask it the opposite. If you understand what I've told you, to disregard that testimony and not let it influence your decision in this case in any way during your deliberations, if you understand and accept and respect what I just told you, raise your right hand. [¶] All right. For the record, the jury, all of the jurors and including the alternate juror have raised their right hand."

Following pronouncement of the jury's verdict, defendant moved for a new trial based on the prosecutor's alleged misconduct in eliciting testimony from Detective Lawrie about the "narcotics pipe, sexual lubricant, condom wrappers, condoms, a sexual device referred to as a 'white ghost,' a foam water flotation device known as [a] 'swim noodle' which was fashioned in the shape of a penis, and a photograph of a small unidentified girl." The People opposed the motion. After reviewing the proceedings and chastising the prosecutor, the trial court denied defendant's motion, finding that defendant had suffered no prejudice because there was ample evidence of his guilt and that the court had effectively admonished the jury to disregard the testimony.

The trial court sentenced defendant to an aggregate indeterminate life term of 55 years to life: 15 years to life for count one (oral copulation), a consecutive term of 25 years to life for count two (sodomy), a consecutive term of 15 years to life for count three

8

(oral copulation), and an additional term of 25 years to life for count four (sodomy), to be served concurrently with the sentence imposed in count two.

DISCUSSION

I

*Prosecutorial Misconduct*

Defendant contends the prosecutor committed misconduct by eliciting testimony from Detective Lawrie revealing the presence of certain items in defendant's possession that had previously been ruled inadmissible, and that defense counsel was ineffective for failing to object when the trial court omitted the foam "sex toy" from its admonition to disregard the detective's testimony. The Attorney General contends the prosecutor did not commit misconduct because she was establishing foundation for the detective's testimony when she elicited testimony regarding the items contained in the bag the detective received from the officers who arrested defendant, and that even if there was misconduct, it was cured by the trial court's admonitions; there was no ineffective assistance because the court's failure to highlight the "swim noodle" in its admonitions was beneficial to defendant; and any error was harmless. We conclude the prosecutor, perhaps unintentionally, violated the court's order regarding the admissibility of this evidence by eliciting testimony relating to it. But the misconduct was not prejudicial because the trial court promptly and effectively admonished the jury and because it is not reasonably probable, even assuming counsel was ineffective, that defendant would have obtained a better result in the absence of the testimony identifying the items collected.

"It is misconduct for a prosecutor to violate a court ruling by eliciting or attempting to elicit inadmissible evidence in violation of a court order. [Citation.] . . . Because we consider the effect of the prosecutor's action on the defendant, a determination of bad faith or wrongful intent by the prosecutor is not required for a

9

finding of prosecutorial misconduct. [Citation.]" (*People v. Crew* (2003) 31 Cal.4th 822, 839 (*Crew*).)

Here, though the trial court initially precluded only the admission of the photographs of the items collected, the trial court later sustained defense counsel's objection to the prosecutor questioning the witness about the items in the bag officers turned over to Detective Lawrie because it was unclear whether the items were already in the bag when located by the officers--which would indicate they are possessed by a single individual--or collected by the officers from various parts of the residence where defendant was arrested--which might indicate possession by someone other than defendant. In sustaining the objection, the trial court cautioned the prosecutor that Detective Lawrie "can't offer testimony about those items until you lay a foundation of how those items were collected, who they were collected by, how they're associated with the Defendant."

Thus, when the prosecutor asked Detective Lawrie about items defendant admitted were his, there was no violation of the court's order because as to those items the requisite foundation tying the items to defendant was established. However, when the prosecutor proceeded to elicit testimony from Detective Lawrie about the other items in the bag, she violated the court's order because as to those items, she had not established how the items were collected, by whom, or that they belonged to defendant. It is irrelevant that the prosecutor apparently misunderstood the trial court's ruling requiring a foundational showing and believed instead that the presence of the items in a bag of uncertain origin with defendant's identification and pink shorts was sufficient to link the rest of the items to defendant. (*People v. Mills* (2010) 48 Cal.4th 158, 199.) The proper course would have been to request a clarification of the court's ruling or to request a hearing outside the presence of the jury to lay a foundation for the items the court had disallowed. Her questioning of the detective to elicit testimony about the items the court

10

had declared inadmissible, without establishing a foundation to support an argument that the items belonged to defendant violated the court's prior evidentiary ruling.

However, the prosecutor's error was cured by the trial court's admonition and its subsequent inquiry to the jurors. "It is only in the exceptional case that 'the improper subject matter [of evidence] is of such a character that its effect . . . cannot be removed by the court's admonitions.' [Citation.]" (*People v. Allen* (1978) 77 Cal.App.3d 924, 935.) Thus, "[w]hen a trial court sustains defense objections and admonishes the jury to disregard the comments, we assume the jury followed the admonition and that prejudice was therefore avoided. [Citation.]" (*People v. Bennett* (2009) 45 Cal.4th 577, 595.) So too do we assume the jurors responded honestly to the court's inquiry into whether they could disregard the improperly elicited testimony. (*People v. Hardy* (1992) 2 Cal.4th 86, 208.)

Here, immediately after holding the foundational hearing during which it was confirmed that Detective Lawrie did not know whether the items in the bag belonged to defendant (other than the items defendant admitted were his), where the items were collected, or who collected them, the trial court struck the testimony and instructed the jury to disregard it. Specifically, the trial court stated: "Before you were excused to the hallway, . . . you heard testimony that when the Defendant was arrested and brought to the Police Station, that certain items were brought to the police station. [¶] The Detective mentioned a narcotics pipe, lubricant, presumably gels or lubricant used for sexual purposes, condom wrappers or condoms, an item referred to as a 'ghost' which was testified or described as a sexual device or something used for sexual pleasure, and a photograph of a small unidentified girl. [¶] Disregard all of that testimony about those items. [¶] There is no testimony, no evidence before you, that any of those items belonged to or were associated with the Defendant in any fashion. [¶] You are not to consider that testimony in any way against [defendant]." The following morning, the trial court provided further instruction to the jury to disregard detective Lawrie's

11

testimony about "the collection of a narcotic pipe, condoms, lubricants, a photograph of an unknown small girl, and some sort of sexual device . . . [¶] . . . because there's nothing that demonstrates that it was associated with the defendant in any way." The court instructed the jury not to consider that testimony or evidence in any way and then confirmed by a show of hands that every juror would disregard the testimony and not allow it to influence his or her decision.

The trial court's instructions and the jurors' confirmations that they would disregard Detective Lawrie's testimony listing the various items located in the bag he received from the officers who arrested defendant cured the error created by the prosecutor's misconduct, at least with respect to the items named by the trial court in its admonitions.

Defendant claims that because the foam sex toy was omitted from the trial court's admonitions, defense counsel rendered ineffective assistance in failing to object further. To prevail on that theory, he must show (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693-694, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*People v. Kelly* (1992) 1 Cal.4th 495, 520.) " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must

be evaluated in the context of the available facts.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925-926.)

While it is true that the trial court's first admonition omitted reference to the modified swim noodle and only referred to the "ghost" sex toy, the trial court's second admonition referred generically to a "sexual device." Thus, the trial court's admonition addressed the entirety of Detective Lawrie's testimony, and the jury affirmatively indicated that it would disregard all of Detective Lawrie's testimony describing the items found in the bag. Additionally, a further objection and request for admonition as to the foam item would have served only to highlight this testimony. Counsel's failure to object may have been a wise tactical decision. Thus, we cannot conclude counsel's performance was deficient. Moreover, as stated below, we find no prejudice resulted from the jury's hearing Detective Lawrie's testimony about the items. Therefore, we find defense counsel did not render ineffective assistance in failing to object to the trial court's admonitions as incomplete.

"A defendant's conviction will not be reversed for prosecutorial misconduct . . . unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. [Citation.]" (*Crew*, *supra*, 31 Cal.4th at p. 839; see also Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103 [state law evidentiary errors tested by *Watson* standard of prejudice].) Here, the jury heard testimony recounting the acts of oral copulation and sodomy from the victim and from the numerous individuals to whom she reported the abuse. There was additional corroborative testimony from the pediatrician who diagnosed Hailey with oral herpes in her genital region within weeks of when Hailey said the abuse was committed, which coincided with the brief period during which both she and defendant lived at Hailey's stepgrandmother's house in early 2011. Thus, even in the absence of Detective Lawrie's testimony about the various items recovered from the house where defendant was staying when he was arrested, it is unlikely a jury would

13

have come to any different conclusion but that defendant was guilty of the charged crimes. Accordingly, we find defendant suffered no prejudice as a result of the prosecutor's misconduct.

II

*Abstract of Judgment*

As all parties agree, the abstract of judgment incorrectly describes the crime charged in count 2 as "oral copulation of victim 10 years or younger," incorrectly reflects that 15-year-to-life sentences were imposed for all counts, and incorrectly indicates that the sentence in count 4 is to be imposed consecutively. We order the clerk of the trial court to correct the abstract of judgment. (*People v. Jones* (2012) 54 Cal.4th 1, 89 [oral pronouncement is judgment, and written abstract of judgment does not add to or modify judgment as orally pronounced]; see also *In re Candelario* (1970) 3 Cal.3d 702, 705 [appellate court has inherent power to correct clerical errors].) The abstract should be corrected to reflect that count 2 was based on the crime of "sodomy of victim 10 years or younger"; defendant was sentenced to 15 years to life for counts 1 and 3, and 25 years to life for counts 2 and 4; and the sentence on count 4 is to run concurrently with the sentence on count 2.

DISPOSITION

The judgment is affirmed. The clerk of the trial court is directed to correct the abstract of judgment to reflect that count 2 was based on the crime of "sodomy of victim 10 years or younger"; defendant was sentenced to 15 years to life for counts 1 and 3, and 25 years to life for counts 2 and 4; and the sentence on count 4 is to run concurrently with the sentence on count 2. The clerk of the trial court is further directed to forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.

        HULL        , J.

We concur:

      RAYE      , P. J.

      DUARTE    , J.

15