[No. B101203. Second Dist., Div. Seven. May 14, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
DARREN STEVEN CLOYD, Defendant and Appellant.

**COUNSEL**

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Arthur H. Auerbach, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—A jury convicted appellant of robbery (Pen. Code, § 211; statutory references, unless otherwise noted, are to the Penal Code) and, in a bifurcated proceeding, the trial court found true allegations appellant had suffered prior convictions for robbery (§§ 211, 667, subds. (b)-(i), 667, subd. (a)(1), 667.5, subd. (b)) and possession for sale of cocaine base (Health & Saf. Code, § 11351.5; § 667.5, subd. (b)). Appellant was sentenced to state prison for 15 years.

Appellant contends the trial court erred in excluding evidence the victim had two misdemeanor cases pending and had failed to appear on those cases.

Appellant also contends the trial court erred in admitting the victim's preliminary hearing testimony.

We find no error and affirm the judgment.

FACTUAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

On August 13, 1995, about 12:10 a.m., Doris McCalpin[1] (victim) was walking north on Magnolia approaching 5th Street, in Long Beach, as appellant was walking south. When they passed each other appellant "came back," grabbed the victim's purse and said, "Let go of the purse, bitch." The victim held on until appellant raised his hand as though to strike her, when she ducked and let go. Appellant, with the victim's purse, ran off.

Long Beach Police Officer Kanaley, as he approached the corner of 5th and Magnolia, in his marked patrol car, noticed a "commotion." He saw appellant, who wore a white tee shirt, run across the street, and saw the victim yelling and waving at him. The victim, who appeared excited, emotional, and scared, told Officer Kanaley, "He took my purse."

Officer Kanaley pursued appellant but lost sight of him in an alley. He radioed for assistance and described the suspect.

Officer Davenport heard Officer Kanaley's broadcast and then saw appellant jogging west on 5th Street holding a white tee shirt in his hand. Officer Davenport pulled alongside appellant and told him to "come here." Appellant changed direction, increased his pace, and fled.

Officer Davenport attempted to pursue appellant but soon lost sight of him. He broadcast information about his contact with the robbery suspect and soon other officers established a perimeter, securing the area.

Officer Davenport exited his patrol car and searched for appellant. During the search, Sergeant Hiscox talked to a male Hispanic and then Sergeant Hiscox and Officer Davenport went to apartment 1, 436 Main Street. Ruby Bishop, appellant's "common law" wife, answered the door and, after the officers explained they were looking for a robbery suspect, said they could

---

[1]Ms. McCalpin did not appear at trial. Her preliminary hearing testimony was read to the jury.

come in and search. They found appellant hiding in a closet. They looked for but did not find the victim's purse.

The victim was brought to the scene and identified appellant as the robber.

The defense was *not* mistaken identity but rather that there had been no robbery, only an ordinary $5 purchase of rock cocaine transaction.

Appellant testified he approached the victim to buy cocaine because she (everyone called her "Moms") was a well-known rock cocaine seller and user. He put $5 in her hand, she removed rock cocaine from her mouth but dropped it. He picked it up, thus completing the transaction, and, now eager to smoke his cocaine, trotted off. Then, when he saw an approaching patrol car, he thought the officer might have observed the drug purchase and, because he was on parole, he fled. For the same reason, he later fled from Officer Davenport. The only reason he removed his tee shirt was to wipe the sweat from his face.

He did not discard the rock cocaine during his flight but when he arrived home and told his wife about his purchase, he did as she said, and flushed it down the toilet.

Ruby Bishop testified she and appellant have lived as husband and wife and have four children. Appellant was a "little out of breath" when he returned home that night and when he showed her the rock cocaine he had just bought from "Moms" she made him flush it down the toilet. She once bought rock cocaine from "Moms"—for a friend—and saw "Moms" sell rock cocaine to other people. She also once saw "Moms" smoke rock cocaine. Shortly after appellant's arrest, Ruby Bishop talked to "Moms" who told her the robber wore khaki pants (not the black shorts appellant wore) and did not fit appellant's description.

## DISCUSSION

1. *Appellant contends the trial court erred in excluding evidence the victim had two misdemeanor cases pending and had failed to appear on those cases.*

Appellant asserts the instant case, like *People* v. *Allen* (1978) 77 Cal.App.3d 924 [144 Cal.Rptr. 6], involved a witness with a motive to fabricate, a motive to win leniency.

In *Allen* the prosecutor called William O. who testified he and the defendant committed the robbery but it was the defendant's idea and the defendant who had the gun. William O., a minor, had not yet been sentenced in his juvenile proceeding for *this* robbery and had two other robbery cases still pending. *Allen* held it was prejudicial error to prevent cross-examination of William O. concerning the pending robbery cases. Those pending cases provided William O. with a motive to help the prosecutor in order to obtain leniency.

Plainly, *Allen* is inapposite. Unlike *Allen*, Doris McCalpin and appellant were not robbery accomplices. Unlike *Allen*, Doris McCalpin did not help the prosecution by testifying against appellant at trial. Unlike *Allen*, by failing to appear Doris McCalpin prevented *any* disposition of her pending cases, let alone more favorable ones. Unlike *Allen*, by failing to appear for trial Doris McCalpin handicapped the prosecution and helped the defense. Moreover, we note, the prosecutor of appellant was the Los Angeles County District Attorney while the prosecutor of Doris McCalpin's pending misdemeanor cases was the Long Beach City Prosecutor.

The trial court did not err in excluding evidence of the victim's pending misdemeanor cases because those pending cases were irrelevant to the victim's credibility.

Appellant additionally argues that the victim's failure to appear on her two misdemeanor cases (both involved Health & Saf. Code, § 11364, possession of drug paraphernalia), resulting in the issuance of bench warrants, and her failure to appear, as ordered, in the instant trial constitute "conduct . . . amounting to misdemeanors," admissible under *People* v. *Wheeler* (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418, 841 P.2d 938]. We disagree.

*Wheeler* held "that if past criminal conduct amounting to a misdemeanor has some logical bearing upon the veracity of a witness in a criminal proceeding, that conduct is admissible, subject to trial court discretion . . . ." (4 Cal.4th at p. 295.) The misdemeanor must also involve moral turpitude. (*Id.* at pp. 288, 295.)

To satisfy the "criminal conduct amounting to a misdemeanor" requirement of *Wheeler*, appellant cites section 1320. But that section applies only to a defendant charged with a *felony*, released on her own recognizance, who "willfully fails to appear . . . ." Doris McCalpin was not charged with a felony and had not been shown to "*willfully* fail to appear."

Appellant also cites section 1331 which makes "[d]isobedience to a subpoena, or a refusal to be sworn or to testify . . . a contempt." But the record failed to show Doris McCalpin disobeyed a subpoena,[2] refused to be sworn, or refused to testify.

Finally, appellant cites section 166, subdivision (a)(4) which makes it a misdemeanor to "willfully" disobey a court order. Although Doris McCalpin did not obey the trial court's order to return on February 6, 1996, there was no evidence her failure was "willful." Nor are we satisfied such a failure would constitute "moral turpitude."

■ *Wheeler* recognized the danger of burdening trials with collateral issues of witness misconduct. (*People* v. *Wheeler, supra,* 4 Cal.4th at p. 290.) It stated: "Of course, the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude. Beyond this, the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues. By expressly preserving this authority, [California Constitution, article I,] section 28(d) makes clear the voters' determination to prevent such consequences.

"When exercising its discretion under Evidence Code section 352, a court must always take into account, as applicable, those factors traditionally deemed pertinent in this area. (See *People* v. *Beagle* [(1972)] 6 Cal.3d [441,] 453-454 [99 Cal.Rptr. 313, 492 P.2d 1]; see also *People* v. *Castro* [(1985)] 38 Cal.3d [301,] 309 [211 Cal.Rptr. 719, 696 P.2d 111].) But additional considerations may apply when evidence other than felony convictions is offered for impeachment. In general, a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony. Moreover, impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*People* v. *Wheeler, supra,* 4 Cal.4th at pp. 296-297, fn. omitted.)

---

[2]She signed citations promising to appear on each of the misdemeanors. When she failed to appear initially, bench warrants issued. Later, when she did appear the warrants were recalled.

■ We find the trial court did not abuse its broad discretion by not allowing the jury to speculate why Doris McCalpin had failed to appear as a trial witness.[3]

2. *Appellant contends the trial court erred in admitting the victim's preliminary hearing testimony.*

■ Even if a witness is unavailable, her preliminary hearing testimony is not admissible at trial unless the defendant had a "meaningful opportunity for effective cross-examination . . . in the earlier proceeding." (*People* v. *Brock* (1985) 38 Cal.3d 180, 191 [211 Cal.Rptr. 122, 695 P.2d 209].)

Appellant contends he lacked such an opportunity because his attorney was unaware of the victim's pending misdemeanor cases and therefore could not cross-examine her about them at the preliminary hearing. The contention does not bear scrutiny.

Since possession of a controlled substance does not involve moral turpitude (*People* v. *Castro* (1985) 38 Cal.3d 301, 317 [211 Cal.Rptr. 719, 696 P.2d 111]), certainly mere possession of narcotic paraphernalia does not. Therefore *People* v. *Wheeler, supra,* 4 Cal.4th 284 would not have authorized defense counsel to ask the victim at the preliminary hearing if she had possessed narcotic paraphernalia.[4]

But, realistically, it was not these two cases—no more than unproven accusations—the defense was interested in. *If,* as appellant and Ruby Bishop later testified, "Moms" (the victim) was a notorious drug seller and user with whom they had both had contact before August 13, 1995, then defense counsel could—pursuant to *People* v. *Wheeler*—have asked her if she had committed such misconduct and whether, on August 13, 1995, rather than being robbed by appellant, she had sold him rock cocaine. Defense counsel asked no such questions. Instead, as is usual in robbery cases, defense counsel skillfully questioned the victim's identification of appellant.

Defense counsel was provided full opportunity to cross-examine the victim at the preliminary hearing. Although direct examination by the prosecutor is two transcript pages, cross-examination consumed nine pages. There were no objections during cross-examination and no restrictions imposed by the magistrate.

We find the trial court properly admitted the preliminary hearing testimony of the victim.

---

[3]The trial court informed the jury she had been *ordered* to appear but they should not speculate why she had not.

[4]And, if asked, she could have asserted her privilege against self-incrimination.

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied June 6, 1997, and appellant's petition for review by the Supreme Court was denied August 20, 1997. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.