Filed 10/12/22  P. v. Nunally CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL DUSHAWN NUNALLY,<br><br>Defendant and Appellant. | C092512<br><br>(Super. Ct. No. 12F07000) |

Defendant Michael Dushawn Nunally was tried twice on the charge of first degree murder of Kaster Tezino, with allegations of firearm use under Penal Code section 12022.53, subdivisions (b), (c) and (d).[1]  The jury in the first trial convicted

---

[1] Undesignated statutory references are to the Penal Code.

1

defendant of first degree murder but found the section 12022.53, subdivision (d) firearm use allegation not true.  The trial court granted defendant a new trial on grounds of juror misconduct, and another panel of this Court affirmed the trial court's order.  (*People v. Nunally* (Apr. 11, 2017, C075860) [nonpub. opn.] (*Nunally*).)  Following retrial on the same amended information, a jury convicted defendant of first degree murder and found true allegations that he personally used a firearm, personally discharged a firearm, and personally and intentionally discharged a firearm causing death.  The trial court sentenced defendant to an aggregate 50 years to life in prison.

Defendant now contends (1) the double jeopardy guarantee and the doctrine of collateral estoppel barred retrial of the firearm use allegations because the jury at his first trial found the section 12022.53, subdivision (d) firearm use allegation not true (2) the trial court should have granted his motion for a mistrial after a prosecution witness testified about defendant's incarceration in violation of an in limine order, and (3) the trial court should not have instructed with CALCRIM No. 372, which allowed the jury to infer consciousness of guilt from flight.

We conclude (1) retrial of the firearm use allegations was barred under double jeopardy principles, (2) the trial court did not abuse its discretion in denying defendant's motion for a mistrial, and (3) defendant forfeited his claim of instructional error, and his counsel was not deficient in failing to object.

We will reverse the denial of defendant's motion to strike the firearm use allegations, reverse the true findings on the section 12022.53, subdivision (b), (c) and (d) firearm use allegations, and vacate the sentence on those allegations.  We will affirm the denial of defendant's motion for mistrial and in all other respects affirm the judgment.

## BACKGROUND

The following background is derived from evidence presented at defendant's second trial.

2

Margaret Kephart was working as a prostitute in September 2012. That month she arranged a date with a man she knew as Sal. Sal's true name was Kaster Tezino. Tezino was on probation for transporting a minor over state lines for prostitution.

According to Kephart, Tezino proposed to be her pimp. But Kephart said Tezino attempted to rape and rob her at gunpoint, and she reported the incident to defendant. She gave defendant a description of Tezino and identified Tezino in a photograph.

Later that day, Tezino contacted Kephart and asked to meet with her. Defendant told Kephart to arrange a meeting with Tezino at a restaurant and then at a motel, and Kephart made the arrangements.

Caesar Williams had known defendant since they were young. Defendant was known as Money Mike. Williams testified he and defendant worked as pimps in September 2012. Williams loaned defendant his Jaguar.

Defendant, Williams, and a man named Mitchell went to the motel where Kephart had arranged to meet Tezino. Defendant saw Tezino and made small talk with him. As Tezino turned to walk away, defendant pulled out a gun and fatally shot him. Williams and defendant fled together.

After the shooting, defendant asked Williams to get rid of a .40 caliber-semiautomatic gun and his clothes. Defendant and Williams also switched cars. Defendant later drove Kephart to Williams's apartment and asked Williams to watch her. Kephart testified defendant told her Tezino was dead and instructed her to "stay low," not use her phone, and to say nothing if the police interviewed her.

Williams was charged with murder along with defendant. After about nine months in custody, he cooperated with law enforcement, pleaded to being an accessory after the fact, and was granted probation with time served. He admitted helping defendant after the shooting, but denied shooting Tezino. Kephart and Williams testified for the People at the trial. Defendant did not testify.

3

The jury convicted defendant of first degree murder and found true allegations that he personally used a firearm, personally discharged a firearm, and personally and intentionally discharged a firearm causing death. The trial court imposed an aggregate prison term of 50 years to life. It imposed but stayed prison terms for the firearm enhancements.

## DISCUSSION

### I

Defendant contends the double jeopardy guarantee and the doctrine of collateral estoppel barred retrial of the firearm use allegations because the jury at his first trial found the firearm use allegations not true.

### A

At defendant's first trial, the wrong cell phone was inadvertently and erroneously produced at trial and admitted into evidence. During deliberations, the jury from the first trial asked if it could consider the contents of the phone even if it had not been discussed in court. Before the trial court could respond, the jury requested a charger for the phone. The trial court directed the jury to render a decision based on the evidence presented at trial, and if no evidence was presented regarding the content of the phone, the content should not be considered. (*Nunally, supra*, C075860.)

The jury found defendant guilty of first degree murder but found untrue the section 12022.53, subdivision (d) allegation that defendant personally and intentionally discharged a firearm causing death. The record before us does not contain verdicts on the section 12022.53, subdivision (b) and (c) allegations that defendant personally used a firearm and personally and intentionally discharged a firearm. However, given the specific factual scenario of this case and defendant's alleged actions, the jury necessarily found those allegations not true in finding the subdivision (d) allegation not true, and the People do not contend otherwise.

After the jury returned its verdicts, certain jurors informed counsel that they had seen information on the cell phone. Defense counsel moved for a new trial asserting juror misconduct. The trial court found that the jurors had viewed phone content relating to defendant that was not admitted into evidence. The trial court concluded the process was compromised and tainted and the prejudicial effect of the juror misconduct was not overcome. It granted defendant's motion for a new trial. On appeal from the trial court's order granting defendant a new trial, another panel of this Court found no abuse of discretion. (*Nunally, supra*, C075860.)

At the second trial, the People moved in limine to reinstate the firearm use allegations that the first jury found not true, arguing that retrial on the allegations was not barred because defendant moved for a new trial and the motion was granted. Defendant moved in limine to strike the firearm use allegations, citing double jeopardy. The trial court denied defendant's motion.

B

"The principles of double jeopardy are of federal and state constitutional origin. The Fifth Amendment of the United States Constitution provides that '[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb. . . .' [Citation.] Similarly, the California Constitution provides that '[p]ersons may not twice be put in jeopardy for the same offense. . . .' " (*People v. Eroshevich* (2014) 60 Cal.4th 583, 588.) In general, the constitutional protection against double jeopardy precludes retrial for the same offense after a conviction or an acquittal. (*Id.* at p. 590.) A jury's not-true finding on an enhancement allegation bars retrial on the enhancement even if the conviction on the substantive offense is reversed on appeal. (*People v. Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 78, fn. 22 [approving the defendant's double jeopardy objection to reprosecution on a firearm use allegation that the first jury found not true]; *People v. Santamaria* (1994) 8 Cal.4th 903, 913-914 [stating in dicta that the double jeopardy clause and collateral estoppel would preclude the retrial of a weapon

5

enhancement allegation the first jury found to be not true]; *People v. Pettaway* (1988) 206 Cal.App.3d 1312, 1331-1332 [concluding that under double jeopardy principles, the defendant may not be retried on enhancement allegations that the first jury found in his favor].)

Based on the foregoing authorities, because the jury in the first trial found the section 12022.53, subdivision (d) firearm use enhancement allegation not true, defendant was entitled to the benefit of that determination notwithstanding the subsequent finding by the trial court that the process in the first trial was prejudicially compromised and tainted by juror misconduct. Defendant could not be retried on the firearm use enhancement allegations, and the trial court should have granted defendant's motion in the second trial to strike the allegations.

The Attorney General cites certain cases for the proposition that retrial of the firearm use enhancement allegations was appropriate, but those cases are distinguishable because they involved a defendant's voluntary waiver relating to a prior conviction, not a prior acquittal or prior untrue finding on an enhancement allegation. (See *People v. Eroshevich, supra*, 60 Cal.4th at pp. 586, 591-592; *Porter v. Superior Court* (2009) 47 Cal.4th 125.)

We will reverse the denial of defendant's motion to strike the firearm use allegations, reverse the true findings on the section 12022.53, subdivision (b), (c) and (d) firearm use allegations, and vacate the sentence on those allegations.

II

Defendant next argues the trial court should have granted his motion for a mistrial of the second trial after Williams testified about defendant's incarceration in violation of an in limine order. Defendant claims the testimony resulted in prejudice that was not cured by the trial court's admonition to the jury.

6

A

During Williams's direct examination testimony at the second trial, the prosecutor asked if Williams hung out with defendant. Williams responded, "off and on, yes." When asked to explain what he meant, Williams said: "If he went to prison, that was off."

Defendant's trial counsel moved for a mistrial, explaining that Williams violated the trial court's in limine order not to testify that defendant had been incarcerated. The prosecutor responded that he discussed the in limine motions with Williams and Williams's prior testimony did not mention defendant's criminal history. The prosecutor suggested striking Williams's statement and admonishing the jury not to consider the statement, arguing that Williams's statement would not unduly prejudice defendant. But defendant's trial counsel urged that "the bell has been rung." He said the jurors were intelligent and even trained in the law and knew exactly what Williams meant.

Defendant's trial counsel said an admonition would be "ringing that bell again." He said he watched the jurors' faces when Williams made the statement and saw "immediate and responsive" recognition in the face of at least four jurors, and he believed the prejudice was too great to overcome with a curative instruction.

The trial court ruled that the reference to prison was brief, and no one intended to bring out that testimony. It concluded that an admonition would cure the improper testimony and detailed how he would instruct the jury. Defendant's trial counsel elected to have the trial court strike Williams's statement and give the instruction the trial court had proposed.

The trial court admonished the jury as follows: "Please listen very carefully. It is your duty to determine if the People have proved Defendant guilty beyond a reasonable doubt. It is to determine if the facts in the case presented through witness testimony, exhibits marked and moved into evidence, and anything else I tell you may consider as evidence, reach that burden. [¶] You may not for any reason consider evidence which is

7

stricken from the record. Your sworn duty is to not discuss or consider such evidence in any way in arriving at your verdict. [¶] There were some answers stricken during the testimony of Ms. Kephart, and you must not consider that information in any way in reaching your verdict. [¶] I am also going to strike a statement made by Mr. Williams regarding not seeing the Defendant due to incarceration. Is everybody clear on that? You may not consider that information in any way in arriving at your verdict in this case. You must not bring it up, discuss it or allow it to influence your decision in any way, period. [¶] Just as I have instructed you may not consider penalty or punishment or the Defendant's current custodial status, you must not consider anything the Court strikes from the record. [¶] Do you each understand this admonition?" The jury responded in the affirmative. The trial court then asked, "Can you each assure me you can follow that admonition?" The jury again responded in the affirmative. The trial court added, "Is there anybody that is concerned about their ability to follow that admonition for any reason?" The record indicates no concern was expressed.

B

A trial court should grant a motion for a mistrial when prejudice arising from improper testimony cannot be cured by admonition and the defendant's chances of receiving a fair trial have been irreparably damaged. (*People v. Jenkins* (2000) 22 Cal.4th 900, 985-986; *People v. Collins* (2010) 49 Cal.4th 175, 198 .) Whether a witness's improper testimony is incurably prejudicial requires a nuanced, fact-based analysis. (*People v. Chatman* (2006) 38 Cal.4th 344, 369-370.) A thorough and forceful instruction to the jury may be adequate to prevent prejudice to the defendant. (*People v. Price* (1991) 1 Cal.4th 324, 428.) Because it is in the best position to evaluate the impact of a witness's statement, the trial court is afforded broad discretion in judging the effect of the statement. (See *People v. Lucero* (1988) 44 Cal.3d 1006, 1022.) Accordingly, a motion for mistrial is directed to the sound discretion of the trial court. (*Jenkins,* at p. 985.) We review the trial court's ruling on a motion for a mistrial under the deferential

8

abuse of discretion standard.  (*People v. Cox* (2003) 30 Cal.4th 916, 953, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Here, the trial court did not abuse its discretion in concluding that the curative admonition it proposed would remedy any prejudice arising from Williams's statement, and that defendant's right to a fair trial was not irreparably damaged by Williams's statement.  The challenged statement was brief and equivocal.  There was no other mention of defendant's incarceration.  The trial court struck Williams's statement about incarceration and instructed the jury in a direct and thorough manner not to consider the testimony by Williams in any way.

Defendant says Williams's improper testimony was too dramatic for the jury to ignore.  But the challenged statement was not more dramatic than the evidence that defendant was a pimp, came up with the plan to lure Tezino to the motel, shot him, and then told Kephart not to say anything to police.

"A jury is presumed to have followed an admonition to disregard improper evidence particularly where there is an absence of bad faith.  [Citations.]  It is only in the exceptional case that 'the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions.' "  (*People v. Allen* (1978) 77 Cal.App.3d 924, 934-935.)  After instructing the jury not to consider Williams's statement, the trial court asked the jurors multiple questions to confirm they understood and would follow its instruction, and it received the jurors' assurance they would heed the instruction.  The trial court's admonition and follow-up questions to the jury were adequate to cure any possible prejudice caused by Williams's statement.  (*People v. Valdez* (2004) 32 Cal.4th 73, 122-123, 124-125 [witness's fleeting references to jail and the fact that the defendant was at Chino State Prison were not so prejudicial that a curative instruction would not have mitigated any possible prejudice to the defendant]; *People v. Price, supra*, 1 Cal.4th at pp. 430-431 [prejudice in witness's testimony relating

9

to defendant's incarceration was not incurable by admonition].)  Nothing in the record indicates the jurors disregarded the trial court's clear instruction.

Defendant claims the prosecutor's failure to prevent Williams from testifying about defendant's criminal history was inexcusable.  To the extent he is now alleging prosecutorial misconduct, defendant forfeited the claim by failing to object on that ground and in a timely manner at the trial and failing to request an admonition to the jury. (*People v. Collins, supra*, 49 Cal.4th at p. 198.)

### III

Defendant further asserts the trial court should not have instructed with CALCRIM No. 372 in the second trial, thereby allowing the jury to infer consciousness of guilt from flight.  He claims the instruction discriminates against people of color who have reasons for avoiding contact with law enforcement officers that are unrelated to consciousness of guilt.

If defendant believed the CALCRIM No. 372 instruction was incorrect or improper, he had an obligation to object or request amplifying language.  (*People v. Lee* (2011) 51 Cal.4th 620, 638; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1051.)  He forfeited his claim with regard to CALCRIM No. 372 because he did not object to the instruction in the trial court or seek to modify the instruction.

Defendant asserts, in the alternative, that his trial counsel was ineffective in failing to object to the CALCRIM No. 372 instruction or failing to request proper instruction.

To establish ineffective assistance of counsel, defendant must prove that his (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant.  (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674].)  If defendant makes an insufficient showing on either of those components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.)

10

We review trial counsel's performance with deferential scrutiny, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*People v. Maury, supra*, 30 Cal.4th at p. 389; *Strickland v. Washington, supra*, 466 U.S. at p. 689.) We accord "great defense to counsel's tactical choices." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

" 'A flight instruction is proper whenever evidence of the circumstances of [a] defendant's departure from the crime scene . . . logically permits an inference that his movement was motivated by guilty knowledge.' [Citation.]" (*People v. Abilez* (2007) 41 Cal.4th 472, 522; see *People v. Mendoza* (2000) 24 Cal.4th 130, 180 (*Mendoza*) [concluding that reason and common sense support inferring consciousness of guilt from evidence of flight immediately after commission of a crime and the permissive inference does not violate due process].) There need only be some evidence that, if believed by the jury, supports the inference of guilty knowledge. (*People v. Alexander* (2010) 49 Cal.4th 846, 921.) When the prosecutor is relying on evidence of flight as tending to show guilt, a trial court must instruct the jury substantially as follows: "The flight of a person immediately after the commission of a crime[] . . . is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (§ 1127c; see *Mendoza,* at pp. 179-180.) No further instruction on the subject of flight is required. (§ 1127c.)

11

The trial court instructed the jury pursuant to CALCRIM No. 372 in a manner consistent with section 1127c. The instruction did not direct the jury to infer consciousness of guilt from defendant's flight. (*Mendoza, supra*, 24 Cal.4th at pp. 180-181.) Rather, the jury was permitted to decide the meaning and importance of flight if it determined that defendant fled the scene immediately after the shooting. Under the instruction given, the jury could consider alternative explanations for defendant's flight. (See *People v. Bradford* (1997) 14 Cal.4th 1005, 1054-1055.) In addition, the jury was instructed that it must decide what the facts were and whether a fact has been proved based on all the evidence.

Here, the evidence of the circumstances of defendant's actions after the shooting logically permitted an inference of guilty knowledge. Defendant's trial counsel could have rationally concluded there was no basis for objecting to the CALCRIM No. 372 instruction. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1224.) Finding no deficiency, defendant's claim of ineffective assistance lacks merit.

Defendant further asserts the judgment should be reversed because the combined effect of multiple errors resulted in prejudice.

"[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) But defendant has not demonstrated a series of trial errors or that he did not receive due process and a fair trial. Accordingly, the claim of cumulative prejudice lacks merit.

DISPOSITION

The order denying defendant's motion to strike the firearm use allegations is reversed. The order denying defendant's motion for mistrial is affirmed. The true findings on the section 12022.53, subdivisions (b), (c), and (d) firearm use allegations are reversed and the sentence on those allegations is vacated. The judgment is otherwise

12

affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation.


                                             /S/                    ,
                                        MAURO, J.



We concur:



      /S/                    ,
ROBIE, Acting P. J.



      /S/                    ,
DUARTE, J.


13