Filed 3/6/24  P. v. Romero-Guzman CA1/1
Reposted with correct file date
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAIRO NICOLAS ROMERO-GUZMAN,<br><br>    Defendant and Appellant. | A166209<br><br>(San Mateo County<br>Super. Ct. No.<br>22SF002121A) |

After a jury convicted defendant Jairo Nicolas Romero-Guzman of one count of being a felon in possession of ammunition (Pen. Code, § 30305, subd. (a)(1)),[1] the trial court sentenced him to the middle term of two years.  On appeal, defendant contends the trial court abused its discretion by (1) excluding testimony there was a store which sold firearms and ammunition several blocks from where he was arrested, which he maintains supports his "justifiable possession" defense; (2) denying his request to further sanitize a prior conviction of possession of a firearm by a felon used for impeachment purposes; and (3) declining to sentence him to the lower term pursuant to section 1170, subdivision (b)(6).

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

We affirm defendant's conviction but remand to allow the court to exercise its discretion on whether to sentence defendant to the low term.

<h1 style="text-align:center">BACKGROUND</h1>

The San Mateo District Attorney filed an information charging defendant with one count of possession of ammunition by a felon, a felony (§ 30305, subd. (a)(1)) and alleging defendant had sustained several prior felony convictions (§ 1203, subd. (e)(4)).

At trial, San Mateo County Deputy Sheriff Joseph Venikov testified that while he was patrolling in his car around 1:00 a.m., he saw defendant walking down El Camino Real in San Carlos. Venikov did not see defendant "doing anything wrong" but recognized him from "previous contacts." Venikov pulled over and "engaged in conversation" with defendant. During this conversation, Venikov asked defendant if he had "anything illegal on his person." Defendant said he had bullets in his pocket, so Venikov asked if he "would consent to a search." Defendant agreed, and Venikov found 10 loose, .45-caliber hollow point bullets in defendant's right pocket. The rounds appeared to be "in working order, did not appear to be fired, intact," meaning the "bullet itself was not detached from the shell casing." Venikov did not find any ammunition or firearms in defendant's backpack.

Defendant testified that as he was walking down El Camino Real, he "found some ammunition" "[r]ight on the sidewalk," about a block away from where he encountered Deputy Venikov. He picked up the "hollow tip" bullets and put them in his pocket so that "little kids couldn't play with them." He planned on throwing the ammunition away, but he had not yet found a trash can when he encountered Venikov. The deputy did not ask if he had "anything illegal" on him. Rather, defendant, "unprompted" and voluntarily,

2

told Venikov he had the bullets in his pocket so Venikov "could throw them away."

The jury found defendant guilty of the charged offense, defendant admitted the prior convictions, and the trial court sentenced him to the midterm of two years.

## DISCUSSION

### Excluding Witness Testimony[2]

Prior to trial defendant moved to allow testimony by Jason Yoakum, a private investigator and former law enforcement officer. Defense counsel stated Yoakum would testify "there is a store three blocks away or three and a half blocks away from where [defendant] was detained that sells guns and ammunition." Yoakum had gone to the store and "observed guns and ammunition" similar to the type found on defendant. Counsel maintained the testimony was relevant to "either a justifiable-possession defense or a momentary-possession defense because it would go to the element that the ammunition was found"; his testimony would provide "an explanation as to why the ammunition might be there, namely that some customer dropped it on the way out or on the way in."

---

[2] Our standard of review of a trial court's ruling excluding evidence is well established. "We review the trial court's rulings regarding the admissibility of the evidence for an abuse of discretion. [Citation.] A trial court's decision to admit or exclude evidence ' " 'will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.' " ' [Citations.] 'This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.' " (*People v. Mataele* (2022) 13 Cal.5th 372, 413–414 (*Mataele*).)

The prosecutor responded that Yoakum's testimony was "overly speculative given the number of links in that chain of inferences necessary for that to actually go to that defense, which is that there is no evidence and there will be no evidence solicited that this ammunition came from that store, that anyone dropped ammunition, that is where the defendant found it. There's no evidence that the defendant found it outside the store. Given how speculative this evidence is, any probative value that it might have is substantially outweighed by the risk of confusing the issues for the jury, and it turns into a mini trial about whether or not someone was negligent for dropping bullets when we don't even know if those are the bullets in this case." He further asserted "all of the statements contained in [Yoakum's] report are hearsay statements of third parties that are not named; so I'm not sure how that can come in." The court denied defendant's motion and excluded Yoakum's testimony and report, ruling it was "irrelevant that an ammo store is three and a half blocks away from where the defendant was detained absent any evidence that someone from that store, either an employee or a customer, actually lost ammunition in the area between where that store is and where the defendant was detained or any further evidence that may be introduced in the record that draws a connection to the . . . ammo and gun store. It is irrelevant. And with that, there doesn't need to be [an Evidence Code section] 352 analysis. But having said that, it would be a tremendous distraction from the focus of what the jury should be deciding unless there is the kind of evidence that I just made reference to. So it is purely speculative, which makes it irrelevant. And absent anything else that is adduced during the course of the trial, I'm not going to allow Mr. Yoakum to testify. . . . Should something be introduced during the trial that makes it in your position . . . a nexus having been established, then ask to approach

4

before any attempt to call this witness, and we will have further hearing on it."

" 'Only relevant evidence is admissible (Evid. Code, §§ 210, 350), and all relevant evidence is admissible unless excluded under the federal or state Constitutions or by statute. (Evid. Code, § 351. . . .)' " (*People v. Cowan* (2010) 50 Cal.4th 401, 482.) " 'Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." ' " (*Mataele, supra*, 13 Cal.5th at p. 413.) " 'The proponent of proffered testimony has the burden of establishing its relevance,' " and the evidence is " 'properly excluded when the proponent fails to make an adequate offer of proof regarding the relevance or admissibility of the evidence.' " (*Ibid.*)

" 'Under Evidence Code section 352, a trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time.' " (*Mataele, supra,* 13 Cal.5th at p. 413.)

Section 30305, under which defendant was prosecuted, prohibits the possession of ammunition by certain persons. (§ 30305, subd. (a)(1).) However, it also provides for a defense, stating a violation of subdivision (a) "is justifiable" where (1) the "person found the ammunition or reloaded ammunition or took the ammunition or reloaded ammunition from a person who was committing a crime against the person who found or took the ammunition or reloaded ammunition"; (2) "The person possessed the ammunition or reloaded ammunition no longer than was necessary to deliver or transport the ammunition or reloaded ammunition to a law enforcement agency for that agency's disposition according to law"; and (3) the person is prohibited from possessing any ammunition. (*Id.*, subd. (c)(1)–(3); see

5

generally CALCRIM No. 2591 [setting forth elements of "Justifiable Possession" defense which defendant bears the burden of proving by a preponderance of the evidence (italics & boldface omitted)].)

Defendant maintains Yoakum's testimony was highly relevant to his defense that his possession of the ammunition was "justifiable," and specifically, would have bolstered his testimony that he found the bullets on the sidewalk.

Yoakum's report stated he had located a "firearms retail business . . . approximately three and a half blocks away" from where defendant was arrested, that the business sold a type of .45-caliber hollow point bullet, and that "sometimes people brought ammunition to the store [to sell] carried in a zip-lock bag."

However, as the trial court pointed out, there was no evidence that the business sold, or any customer had brought into the store to sell, the exact type of ammunition defendant claimed he found. And even if there was any evidence suggesting the store sold the exact type of ammunition defendant possessed, or that a customer had brought the exact type of ammunition to the store to sell, there was no evidence any employee or customer had ever, let alone in the relevant time frame, dropped or lost any ammunition, let alone the exact type defendant possessed, and anywhere near where defendant claimed to have found the bullets.

In short, there simply was no evidentiary "nexus" between the proffered evidence and the asserted defense absent multiple speculative inferences. " '[E]vidence which produces only *speculative* inferences is *irrelevant* evidence.' " (*People v. Babbitt* (1988) 45 Cal.3d 660, 682; *People v. Stitely* (2005) 35 Cal.4th 514, 549–550 ["Speculative inferences are, of course, irrelevant."]; *People v. Williams* (2018) 23 Cal.App.5th 396, 416.) Although,

6

the trial court is "vested with wide discretion in determining the relevance of evidence," it "has no discretion to admit irrelevant evidence." (*Babbitt*, at p. 681; *Williams,* at p. 416.)

Defendant nevertheless claims the prosecutor's closing argument shows that Yoakum's testimony was "directly relevant."

During closing, the prosecutor first discussed the evidence in connection with the elements of the offense. He then addressed what he "anticipate[d] the defense is going to be . . . justified possession." The prosecutor asserted defendant could not establish the requirements of the defense because he had testified he "was not . . . looking for law enforcement to dispose of this property" but rather, a trash can. He next asked the jury to consider whether it was "reasonable to believe" defendant's version of events: whether it was more likely defendant had immediately volunteered that he possessed the ammunition—as he had testified at trial—or whether he had "told the police he had bullets . . . [only after being] asked if he had anything illegal," as Deputy Venikov had testified; whether it was reasonable that defendant found the bullets on the El Camino Real sidewalk several blocks "mere seconds" before Venikov arrived.

The prosecutor then argued, "The defendant testified. And he claimed that he found the bullets like a block or two away [presumably from where he was arrested] on El Camino. You'll have this exhibit when you're deliberating. That's El Camino. One or two blocks away from Olive [where defendant was arrested]. Was it in front of the hospital? Was it in front of—I think there's a 'Java' Juice right there. Is it in front of the pizza store? It strains credibility that a neat stack of bullets is just sitting there in the center of the sidewalk in a major area and that he just sat there picking them up for two to three minutes, and then a second later, a deputy arrives. It's

too convenient. It's not reasonable because, again, you look at it was the totality of the circumstances, all of the evidence."[3] The prosecutor also pointed out Deputy Venikov had testified that in his two years patrolling the area, he "never found a single bullet."

That the prosecutor made passing references to some of the businesses on and around El Camino Real does not make the proffered testimony by Yoakum any less speculative. Furthermore, the gist of the prosecutor's argument was that it was unreasonable to suppose 10 .45-caliber bullets would have been sitting on a sidewalk in a busy business corridor, and ticking off some of the businesses in the immediate vicinity of his arrest only underscored that defendant could not even identify the exact location on El Camino Real where he purportedly found the ammunition.

But even assuming Yoakum's testimony had some marginal relevance, it is apparent the trial court was also of the view it was excludable under Evidence Code section 352.[4] As we have recited, the prosecutor argued the evidence should also be excluded under Evidence Code section 352, and the court observed "it would be a tremendous distraction from the focus of what the jury should be deciding unless there [was] evidence" of a "nexus having been established," that "either an employee or a customer, actually lost ammunition in the area between where that store is and where the defendant

---

[3] The prosecutor referred to an exhibit depicting a "major area" that was within one or two blocks of where defendant was detained on El Camino Real. Defendant made no objection to the exhibit, and it was admitted into evidence.

[4] Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

8

was detained or any further evidence that may be introduced in the record that draws a connection to the . . . ammo and gun store." This conclusion was not an abuse of discretion.[5]

Finally, any abuse of discretion in excluding the testimony was not prejudicial. As a preliminary matter in this regard, defendant maintains excluding the evidence compromised his constitutional right to present a defense, rendering his trial fundamentally unfair, and requiring an assessment of prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). The trial court did not deny defendant the right to present a defense: Defendant testified he found the bullets and planned to throw them away in a trash can but had not yet come across one. And defense counsel argued defendant found the ammunition and "his initial intent was to throw it in a trash can" but "[o]nce the law enforcement agent approached him, he immediately told the law enforcement agent that he had ammunition in his pocket." In short, the trial court's "ruling did not constitute a refusal to allow defendant to present a defense, but merely rejected certain evidence concerning the defense." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325.) Accordingly, the proper standard for assessing prejudice is that enunciated in

---

[5] Defendant points out the Attorney General did not separately address his assertion that the trial court's Evidence Code section 352 determination was also an abuse of discretion and claims the Attorney General thus conceded the point. However, defendant also acknowledges we do not always interpret a party's failure to respond to an argument as a concession or a forfeiture. (*People v. Hill* (1992) 3 Cal.4th 959, 995, fn. 3 [declining to "find a waiver based on nothing more than respondent's failure to respond"], overruled on another ground as stated in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13; see *Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505 ["even a respondent's *complete failure* to address an appellant's argument does not require us to treat the failure to respond as a concession the argument has merit"].)

*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (See *People v. Fudge* (1994) 7 Cal.4th 1075, 1102–1103.)

Nor can defendant establish prejudice under *Watson.* He testified, and additionally concedes on appeal, that he knowingly possessed ammunition—thereby satisfying two elements necessary for a section 30305 conviction. (§ 30305, subd. (a); CALCRIM No. 2591.) Additionally, the parties stipulated to the third element—that he is a person prohibited from possessing ammunition. Thus, the only question was whether defendant proved by a preponderance of the evidence that his possession was "justifiable" as defined in the statute. (See § 30305, subds. (c)–(d); see generally CALCRIM No. 2591.)

Yoakum's testimony was so speculative it is not reasonably probable defendant would have succeeded on his "justifiable" defense had the testimony been allowed. The testimony did not begin to establish that defendant happened to find the 10, .45-caliber hollow point bullets in the middle of a sidewalk he traveled, or that he possessed the bullets no longer than was necessary to deliver them to law enforcement for disposal—the two facts he had to prove to succeed on the defense. (See § 30305, subds. (c)–(d).)

Defendant's reliance on *People v. Minifie* (1996) 13 Cal.4th 1055 (*Minifie*) is misplaced. In *Minifie,* the defendant was charged with "assaultive crimes" and claimed self-defense. (*Id.* at p. 1060.) He wanted to present "substantial evidence of third party threats." The trial court excluded the evidence as inadmissible character evidence and as substantially more prejudicial than probative because the evidence would consume an undue amount of time and confuse the jury. (*Id.* at pp. 1060, 1062–1063.) The Court of Appeal concluded, and the Supreme Court agreed, the "evidence of third party threats [was] admissible to support a claim of

self-defense if there is also evidence from which the jury may find that the defendant reasonably associated the victim with those threats." (*Id.* at pp. 1060, 1065.)

Although "the question [was] close," the Supreme Court also agreed excluding the evidence was prejudicial. While "the claim of self-defense was not compelling," without the excluded evidence "defense counsel could argue . . . only that [the initial aggressor] was a friend of a person defendant had killed, and defendant thought the unarmed [aggressor and victim] was about to hit him with a crutch." (*Minifie, supra,* 13 Cal.4th at p. 1071.) The excluded evidence "was central to the defense" because it "would have strengthened the defense considerably: defendant could have argued that [the initial aggressor's] 'crowd' had in fact killed his friend and threatened that defendant would be 'next.' The jury might find these circumstances justified a stronger reaction to [the victim's] punch than would otherwise be reasonable." (*Ibid.*) The high court went on to say the prosecutor's argument "tip[ped] the scale in favor of finding prejudice." (*Ibid.*) He had argued to the jury that the defendant was " 'trying to create this aura that there is this big conspiracy, this big fear, this big threat out there that if [he] shows his face in West County, he's going to get hurt or killed. *There's no evidence of that. . . .* There's no doubt that there's bad blood between [the victim and defendant]. . . . But to enhance it, to heighten it to the point that it fits into the *contrived* self-defense that they're trying to have you believe is *preposterous because it's not supported by the evidence.*' " (*Ibid.*) However, the "reason there was 'no evidence' and the 'contrived' defense was 'not supported by the evidence,' " said the court, "[was] easily explained. The missing evidence was erroneously excluded. This argument demonstrates that the excluded evidence was not minor, but critical to the jury's proper

11

understanding of the case. It is, therefore, reasonably probable the error affected the verdict adversely to defendant." (*Id*. at p. 1072.)

What defendant here overlooks is that in *Minifie* the high court said the evidence of third-party threats was admissible "to support a claim of self-defense *if there is also evidence from which the jury may find that the defendant reasonably associated the victim with those threats*." (*Minifie, supra*, 13 Cal.4th at p. 1060, italics added.) In other words, in that case, there was a nexus between the proffered evidence and the defense. Here, as we have explained, there was not. And unlike in *Minifie* the prosecutor's closing argument here did not "tip the scales" because his argument did not, and could not, make the proffered testimony any less speculative.

### *Prior Convictions*

Prior to trial, the prosecution sought to admit evidence of defendant's felony convictions from 2010, 2012, and 2017 for impeachment purposes. Defendant, in turn, moved to exclude and/or sanitize the convictions.

At the hearing on the matter, the trial court stated, "looking at the recency of [the] convictions," it would "not be of mind that all of the prior convictions should be admitted." Ultimately, the court ruled it intended to exclude the 2010 conviction, but was prepared to allow impeachment with the 2012 conviction for possession of a firearm for the benefit of a criminal street gang and the 2017 conviction for vandalism. However, with respect to the 2012 conviction, the court concluded it would be "substantially prejudicial to allow the prosecution to impeach the defendant [specifically] with the 186.22 gang conviction" and sanitized that portion of the conviction.

Defense counsel asked that the 2012 conviction be further sanitized to read generally that defendant was " 'convicted of a felony on this day.' " The prosecutor did not "believe that sanitizing is appropriate in this instance. I

12

do believe they are different charges, and it's also the prosecution's duty to put on their case, and the defense can't essentially control that."

The court granted the defense request in part, stating that if "defendant testifies and offers a defense . . . that the possession of this ammunition was transitory, it was his intention to dispose of it and/or anything along those lines, which, in your motions in limine, support what you are going to be asking for which are jury instructions along those lines, I will allow the nature of that conviction to be introduced. If he does not testify in such a way as you have proposed in your motions in limine, then that conviction will need to be sanitized to only reflect that it is a felony conviction out of San Mateo from October 10, 2012. . . ."

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction. . . ." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) Evidence Code sections 788 and 352 govern the admissibility of felony convictions for impeachment. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.) Evidence Code section 788 allows admission of felonies for "the purpose of attacking the credibility of a witness," while Evidence Code section 352 gives the trial court discretion to assess whether the evidence is more prejudicial than probative. (See *People v. Dyer* (1988) 45 Cal.3d 26, 73.) The trial court's exercise of discretion " 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125, abrogated on another ground as stated in *People v. Leon* (2020) 8 Cal.5th 831, 848.)

" 'Evidence of prior felony convictions offered for this purpose is restricted to the name or type of crime and the date and place of conviction.' "

(*People v. Gutierrez* (2018) 28 Cal.App.5th 85, 88–89.) A court's determination of whether to sanitize a prior conviction is guided by four factors: "(1) Whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of the prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. [Citation.] However, these factors need not be rigidly followed." (*People v. Muldrow* (1988) 202 Cal.App.3d 636, 644.)

Defendant "does not contend that the evidence of his convictions should have been excluded altogether" nor does he dispute that a conviction for being a felon in possession of a firearm is a crime evincing moral turpitude nor that the crime was too remote. Rather, he maintains the nature of his prior offense was irrelevant to impeach his credibility and the similarity of the offense was prejudicial because it gave the impression he is a "bad man who illegally possesses guns."

It was not an abuse of discretion to refuse to further sanitize defendant's 2012 conviction. Simply referring to an unspecified felony might have led the jury to speculate on the severity of the conviction, especially in light of the fact that defendant does not contend the trial court erred in failing to sanitize his vandalism conviction. As our Supreme Court has recognized, sanitization presents a defendant with a "archetypal Hobson's choice of (1) remaining silent on the point and subjecting himself to . . . improper speculation by the jury, or (2) divulging the nature of his prior conviction and incurring an equally grave risk that the jury will draw an impermissible inference of guilt. Either way leads to prejudice. . . ." (*People v. Rollo* (1977) 20 Cal.3d 109, 120, superseded by constitutional amendment

14

on other grounds as stated in *People v. Castro* (1985) 38 Cal.3d 301, 307–308, 312–313.)

The felon-in-possession-of a firearm conviction was not identical to the charged offense, but it was similar. However, "Prior convictions for the identical offense are not automatically excluded," rather the " 'identity or similarity of current and impeaching offenses is just one factor to be considered by the trial court in exercising discretion.' " (*People v. Green* (1995) 34 Cal.App.4th 165, 183, quoting *People v. Castro* (1986) 186 Cal.App.3d 1211, 1216.)

It is clear the trial court was aware of its discretion and exercised it. The court ruled the 2010 conviction was too remote and the gang reference in the 2012 conviction was too prejudicial. Based on the record before us, we cannot say the court acted in an arbitrary, capricious, or patently absurd manner in declining to further sanitize the 2012 conviction.

Even assuming the trial court abused its discretion by failing to further sanitize the 2012 conviction, the error was harmless. We again reject defendant's claim that the trial court's evidentiary ruling "violated [his] rights to due process and a fair trial" thus requiring prejudicial review under *Chapman, supra*, 386 U.S. 18. The court's refusal to sanitize the prior did not deter defendant from testifying or presenting his defense. (See *Watson, supra*, 46 Cal.2d at p. 836; *People v. Collins* (1986) 42 Cal.3d 378, 390–391.)

Applying the *Watson* standard, we observe that any danger of undue prejudice posed by the admission of the partially sanitized 2012 firearm conviction was mitigated by the trial court's instruction to the jury that "The evidence that the defendant was previously convicted of [being a] felon in possession of a firearm, (a felony) and felony vandalism, are admitted solely to assist you in evaluating the witness' credibility. You are not to consider

15

this evidence for any other purpose." We must presume, of course, that the jurors followed the court's instructions. (*People v. Avila* (2006) 38 Cal.4th 491, 574.)

*People v. Allen* (1978) 77 Cal.App.3d 924 (*Allen*), which defendant cites, is distinguishable. In that case, the defendant and a cohort, who was a minor, committed an armed robbery. (*Id.* at p. 928.) On rebuttal, the prosecution called the minor's mother to testify, expecting she would testify that the defendant's sister, who had testified for the defense, had told her she was willing to lie in court for her brother. Unexpectedly, the minor's mother testified the defendant's sister had said the defendant " 'was on parole and he couldn't stand another beef.' " (*Id.* at p. 934.) The trial court ordered the answer stricken and immediately admonished the jury to disregard the testimony (*id.* at pp. 934–935) but denied the defendant's motion for mistrial. (*Id.* at p. 929, fn. 5.) The Court of Appeal reversed. (*Id.* at p. 935.)

There was no dispute, said the appellate court, that the mother's testimony had not been proffered, and could not be proffered, for impeachment because "the [defendant's] parole was the result of a prior juvenile adjudication which [by statute] cannot be deemed a conviction of a crime for any purpose." (*Allen, supra*, 77 Cal.App.3d at p. 934; see Welf. & Inst. Code, § 203 ["order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose"].) And while it must generally be presumed the jury has followed instructions, there are "exceptional circumstances" where that presumption must give way. (*Allen,* at pp. 934–935.) The court concluded such was the case before it, given that the record "reveal[ed] an extremely close case in which the jury had to make its fact determination based upon the credibility of the [defendant] and his witnesses and on the credibility of the prosecution's witnesses." (*Id.* at

16

p. 935.) Accordingly, it was "reasonably probable that a result more favorable to [the defendant] would have been reached had the prejudicial information of [his] parole status not been divulged to the jury." (*Ibid.*)

Here, unlike in *Allen,* there was no statutory impediment to using defendant's 2012 felon in possession of a firearm conviction for impeachment. Nor was the conviction the lone conviction used for impeachment, such that it had particular prominence, in contrast to *Allen,* where the only evidence of prior criminal conduct by the defendant appears to have been the unexpected witness testimony. While it is true the jury had to determine whether to credit defendant's testimony that he had found the 10 .45 caliber bullets on the El Camino Real sidewalk only minutes before encountering Deputy Venikov and, on seeing Venikov, immediately changed his objective from finding a trash can to delivering the ammunition to law enforcement for disposal, the record was not "extremely close" warranting departure from the presumption that the jury was able to follow the court's instructions.[6]

### Sentencing

Before sentencing, the trial court considered the probation report, the defendant's sentencing memorandum with an attached report by a social worker who had twice interviewed defendant, and the prosecution's sentencing memorandum.

The probation report recommended denial of probation and a prison sentence. The department noted defendant's criminal history dated back to when he was 18 years old and included 13 convictions for various offenses and two prison sentences. Additionally, his latest parole release included

---

[6] Given our conclusion that the trial court did not abuse its discretion in making the challenged evidentiary rulings, we need not and do not, address defendant's contention of cumulative error.

17

continuing violations until parole was eventually terminated in 2017. During the interview with the probation officer, defendant "denied any sort of substance abuse," "denied ever suffering from a mental health issue," and "denied any prior or current gang affiliations," instead presenting "himself as a law-abiding person with good intentions." The officer noted this was in direct contrast to information contained in a prior probation report, where defendant "reported he had a history of substance abuse, mental health diagnosis, and gang association."

In regard to his family background, defendant reported his parents had divorced when he was nine years old, but declined to speak on the matter, stating "his parents' relationship issues did not concern him." He denied suffering any type of abuse during his childhood, and denied ever having been diagnosed with a mental health issue or being prescribed any medication. Again, this was in direct contrast to other probation records in which defendant indicated his parents' divorce had been "very difficult for him and a source of depression," that he had been previously "diagnosed with depression, bipolar disorder, and schizophrenia and was prescribed medication." When asked about the "previous statements to . . . probation . . . concerning his mental health diagnosis and treatment," defendant "denied ever suffering from any sort of mental health condition and indicated he could not recall being prescribed any medication."

Defendant denied any substance abuse or treatment history, only admitting to twice drinking alcohol. When confronted with his past "arrests for possession of a controlled substance," defendant "admitted he was in possession of methamphetamine" but denied he had used the drug. He also then admitted he had "used cocaine and ecstasy regularly since the age of 15"

18

and that he had completed "18 months of [an] outpatient substance abuse treatment program."

The probation department concluded that under California Rules of Court, rule 4.423 there were "no mitigating circumstances."[7]

Defendant's sentencing memorandum requested the court reduce the felony conviction to a misdemeanor or to "grant the mitigated" term of 16 months. At no point did defendant expressly claim a presumptive lower term was warranted pursuant to section 1170, subdivision (b)(6). However, defendant argued granting the mitigated term was "appropriate given [his] extensive mental illness and the link between that illness and his actions in this case." He cited to a social worker report attached to the memorandum, which "discussed extensively" defendant's "untreated childhood and adulthood traumas compounded by self-medication through illicit drugs"; that defendant reported "hearing voices daily and having auditory and visual hallucinations"; that defendant had stated he had told the "Sherriff Deputy that he believed the bullets were 'bewitched' and thus dangerous to children" and "repeatedly made references to 'demonic spirits' interacting with these bullets" indicating defendant's actions were "driven by his mental health

---

[7] Mitigating factors include, among other things, that "defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime" or "defendant experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the crime." (Cal. Rules of Court, rule 4.423(b)(2)–(3).)

19

disorder"[8]; and the social worker's belief that defendant "likely suffers from undiagnosed schizophrenia."[9]

The People's sentencing memorandum urged the court to impose the midterm of two years. The memorandum did not address any factors in mitigation or address any of the claims of mental illness or trauma. Rather, the People stated defendant was ineligible for probation based on section 1203, subdivision (e)(4).[10]

At the sentencing hearing, defense counsel informed the court defendant was "prepared to explore treatment options." Counsel reiterated defendant was "having delusions about these bullets, being bewitched, and

---

[8] Defendant stated in his memorandum that he had "made a series of strange statements indicating his belief that the bullets were bewitched. [¶] 'Yes sir, on the sidewalk and I picked it up because um it might have had something it might have been bewitched or something and a kind of position, so excuse me, I had to contact our demonic spirits and help me defuse this so I wouldn't destroy anything of the ground so, witching me hell of bad, like, you know, I had to contact demonic spirits, to defuse these, so I can pick them up and put them in my pocket and throw them away.' "

[9] In the interviews with the social worker, defendant reported "adverse childhood experiences," including physical, emotional, and mental abuse by his father, assault by a cousin and emotional abuse by his mother; experiencing homelessness; gang association; and mental health issues, including threats of self-harm. He also reported he had been diagnosed with depression although he could not recall "who diagnosed him or where he was diagnosed." The social worker opined defendant's mental health issues were "align[ed] with an individual who would be diagnosed with schizophrenia" and had been "exacerbated" by his substance abuse use. Finally, defendant reported "an extensive history of substance use."

[10] Section 1203, subdivision (e)(4) provides, "Except in unusual cases in which the interests of justice would best be served if the person is granted probation, probation shall not be granted" to "Any person who has been previously convicted twice in this state of a felony or in any other place of a public offense which, if committed in this state, would have been punishable as a felony."

20

that [someone] was telling him to pick them up," and he "has underlying issues of schizophrenia." Counsel then stated defendant's mother was in court and "can talk a little bit more." The trial court responded, "I don't need any further information," and defense counsel submitted.

The prosecutor submitted on the papers.

The court began by stating defendant had a lack of positive history of probation and "did not seem to take [his] interview with the probation officer . . . seriously." The court noted "the stark contrast between the information that you provided to the probation officer as opposed to what you provided to . . . [the] social worker. [¶] . . . [¶] They cannot be reconciled. And what it reflects upon is your inability to tell the truth." The court continued, that defendant had been "consistently dishonest with the probation officer," pointing to, for example, that defendant "denied any substance abuse history at all, which is remarkable because you also acknowledge that you have previously completed . . . a substance abuse treatment program."

Additionally, defendant's "criminal history is replete with continued violations of the law. It's pretty amazing. While I'm here to sentence you on a felony, you have five or six pending open cases because rehabilitation hasn't worked with you thus far." The court, citing section 1203, subdivision (e)(4), then stated barring unusual circumstances, not present in this case, defendant was not eligible for probation and sentenced him to the midterm of two years. In making its sentencing determination, the court made no reference to section 1170, subdivision (b)(6).

Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), which took effect on January 1, 2022, " 'amended section 1170, subdivision (b) to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting

21

the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction.  (Stats. 2021, ch. 731, §§ 1.3, 3(c), adding Pen. Code, § 1170, subd. (b)(1)–(3), by amendment.)'  [Citation.] . . .

"In addition, Senate Bill 567 'added a provision that requires the court to impose the low term if . . . the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice."  (Stats. 2021, ch. 731, § 1.3, adding Pen. Code, § 1170, subd. (b)(6), by amendment; see Stats. 2021, ch. 731, § 3(c).)' "  (*People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 927.)

We review the sentencing court's choice of term for abuse of discretion.  (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837 (*Panozo*).)  However, a failure to exercise discretion may constitute an abuse of that discretion.  (*Ibid.*)

Defendant contends the "record as a whole unambiguously shows that [his] middle term sentence is based on the trial court's misunderstanding of the law."  (Capitalization & boldface omitted.)  He contends amendments to section 1170 established "a presumptive mandate to impose the lower term for a class of persons who, like [him], have suffered [trauma] . . . when such trauma is a contributing factor to the crime," and here the trial court imposed the midterm without even mentioning his history of "significant . . . trauma."  Specifically, defendant claims "the record and counsel's arguments"—that defendant's underlying trauma and mental health issues, including delusions that the bullets were "bewitched, and that Christopher was telling him to

22

pick them up"—"trigger[ed] section 1170, subdivision (b)(6)'s presumptive mandate to impose the lower term."

The Attorney General concedes this "[a]rguably . . . would support a finding that [defendant's] psychological trauma had contributed to his commission of this offense." However, he points out the "trial court noted, [defendant's] disclosure lacked credibility," and therefore concludes defendant did not meet "his burden of making an initial showing that he was entitled to the lower term presumption on the basis of credible evidence that his traumatic experiences were a contributing factor in his commission of the charged offenses." The Attorney General relies on *People v. Fredrickson* (2023) 90 Cal.App.5th 984 (*Fredrickson*).

In *Fredrickson,* Division Five of this court held the trial "court was not required to make an express finding" as to the section 1170, subdivision (b)(6) presumption "because nothing in the record show[ed] [defendant's] youth was a 'contributing factor' in the commission of the underlying offense." (*Fredrickson, supra,* 90 Cal.App.5th at p. 987.) Although, the defendant was 23 years old at the time of the offense, and thereby a "youth" for statutory purposes, there simply was "no clear indication" in the probation reports, sentencing memoranda, letters submitted on defendant's behalf or arguments made by counsel that her "youth was a contributing factor" in the offense. (*Id.* at pp. 987, 994.)

Initially, we note, as did the court in *Fredrickson*, that "Prior caselaw does not clarify what initial showing would be sufficient to obligate a trial court to make an express finding regarding the Section 1170(b)(6)(B) lower term presumption." At least one court has "variously referred to an 'initial showing,' a 'prima facie showing,' and a 'preliminary showing.' " (*Fredrickson, supra*, 90 Cal.App.5th at p. 994, quoting *People v. Bruhn* (1989)

23

210 Cal.App.3d 1195, 1199–1200.) Another court found "there was sufficient showing . . . where 'defense counsel argued extensively at sentencing that his client's crimes were the byproduct of his military service.' " (*Fredrickson*, at p. 994, quoting *Panozo, supra,* 59 Cal.App.5th at p. 837.) The *Fredrickson* court offered—without deciding—that "an initial showing has been made when the record and/or arguments are sufficient to put a trial court on notice that a defendant's youth may have been a contributing factor in commission of the underlying offense." (*Fredrickson*, at p. 994.) We agree this is a reasonable construction.

However, unlike in *Fredrickson*, defense counsel here did attempt to characterize defendant's mental illness as a contributing factor to his offense when he argued defendant's underlying trauma and mental health issues, including delusions that the bullets were "bewitched, and that Christopher was telling him to pick them up," contributed to his criminal conduct. Accordingly, the trial court was "on notice" that defendant's mental illness "may have been a contributing factor in the commission of the underlying offense." (*Fredrickson, supra*, 59 Cal.App.5th at p. 994.)

It is true the trial court found defendant lacked credibility, citing his "consistent[] dishonest[y]" to the probation officer and his "inability to tell the truth" as evinced by the marked difference between his interviews with the probation officer and the social worker. However, the court did not consider how this weighed in the context of section 1170, subdivision (b)(6). For example, the trial court could have—as the Attorney General suggests—not credited defendant's disclosures at all, meaning the trial court did not believe defendant suffered from a mental illness or that if he did, it was not a contributing factor to the charged offense. Or, the court's comments could demonstrate only that the court did not find defendant's mental health

24

issues, if any and whatever their source, were a *mitigating factor* that "significantly reduced culpability for the crime." (Cal. Rules of Court, rule 4.423(b)(2).)

As relevant here, amended section 1170, subdivision (b)(6)(A) requires imposition of a lower term if defendant's psychological or childhood trauma was a "contributing factor" to the commission of the crime. Because "mental illness may underlay a crime without *also* significantly reducing culpability," the fact that the trial court found defendant's "mental illness was not a *significant* factor in the crime does not subsume a finding it was a lesser *contributing* factor." (*People v. Banner* (2022) 77 Cal.App.5th 226, 241–242; *id.* at p. 242 ["not finding mental illness a mitigating factor under the California Rules of Court does not preclude a separate finding psychological trauma is a contributing factor to the crime under section 1170, subdivision (b)(6)"].)

Thus, while the trial court's comments strongly suggest it would not find defendant's alleged mental health and psychological issues, or childhood trauma to be a *mitigating* factor under the California Rules of Court, those comments do not "clearly indicate" that it would not find defendant's trauma or mental illness to be a *contributing* factor under section 1170, subdivision (b)(6)(A). (See *Panozo, supra*, 59 Cal.App.5th at p. 840 [it was "at the very least, ambiguous as to whether the trial court was aware of its statutory obligations" to "consider the defendant's service-related [posttraumatic stress disorder] as a mitigating circumstance" in evaluating whether to grant probation under section 1170.9 and in selecting the appropriate determinate term under section 1170.91].)

The Attorney General maintains that even assuming the trial court misapprehended its sentencing obligation under section 1170, subdivision

25

(b)(6)(A), the error was harmless, and remand is unnecessary "because it is reasonably probable that the trial court would have declined to impose the lower term in light of the circumstances in aggravation." (See *Watson, supra*, 46 Cal.2d 818.) Respondent notes " 'Only a single aggravating factor is required to impose the upper term,' " and here, at the sentencing hearing, "the prosecutor submitted circumstances in aggravation that outweighed those in mitigation." However, sentencing courts have wide discretion in weighing circumstances in aggravation and mitigation and may balance them against the others in qualitative as well as quantitative terms. (*People v. Roe* (1983) 148 Cal.App.3d 112, 119.) Absent a clear showing the court's sentencing would be the same, it is most appropriate to remand (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand unnecessary when sentencing court's statement "clearly indicate" it would impose same sentence under new law]), so that the trial court can exercise its discretion to decide whether defendant's psychological or childhood trauma was a contributing factor to his commission of the offenses and, if so, whether "the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6); *Banner, supra*, 77 Cal.App.5th at p. 242.) We express no view on how the court should exercise its discretion, but remand to allow for development of the record on the relevant issues and resentencing.

## DISPOSITION

Defendant's conviction of violating section 30305, subdivision (a)(1) is AFFIRMED. His midterm, two-year sentence, however, is REVERSED and the matter remanded for further sentencing proceedings consistent with this opinion.

26

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Langhorne, J.

A166209, People v. Romero-Guzman

27