Filed 12/31/25  P. v. Craig CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B337679 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. MA082001 |
| v. | |
| RODNEY LAMAR CRAIG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa M. Strassner, Judge.  Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Four years ago, Rodney Lamar Craig brutalized his former girlfriend over multiple days. Now he seeks to undo his conviction and two sentencing enhancements. We affirm. Neither prosecutorial misconduct nor sentencing error taint the judgment. Unspecified code citations are to the Penal Code.

I

Craig's ex-girlfriend, Sandra Johnson, testified about her tumultuous relationship with Craig. Craig had abused Johnson before. He often suspected she was cheating on him. He would search her phone and smashed a few of them.

In June 2021, Craig "lost it" after seeing a text message from a man to Johnson. He held her captive for two days and beat her. Johnson testified about Craig's violence. Almost all of her ribs were fractured. Both lungs had collapsed. Doctors put rods and screws in her neck to stabilize it.

Video evidence, police and medical testimony, and photographs corroborated Johnson's battered state when she escaped Craig.

An expert testified it is common for domestic violence victims to stay in abusive relationships and not report the abuse.

The jury heard about Craig's violence against two previous partners. Craig often suspected cheating and was controlling in these relationships, too.

One of the women testified Craig hit her in the face so hard he split open her eyebrow; then he refused to let her leave. Another time, Craig held her captive for a day and threatened to break her jaw and light her on fire. She sought a clean break from Craig and went to Arizona. Craig harassed her by phone and threatened to torture and kill her dogs and family. He also set her property on fire.

The other ex similarly feared Craig. When he thought she was "talking to someone" else, he hit her in the face, swung her around by the hair, and slashed her tires. She ended the relationship, but he kept threatening her. When she saw him out driving, he tried to run his car into hers, jumped up and down on her car, and said he would kill her.

One of Craig's neighbors witnessed Craig verbally abuse Johnson. He testified the last time he saw her at Craig's home, she had a black eye, looked "raggedy," and "was in a panic-type frantic mode."

Craig did not testify.

The jury convicted him of the four charged counts: injuring a dating partner (§ 273.5, subd. (a); count 1), criminal threats (§ 422, subd. (a); count 2), false imprisonment by violence (§ 236; count 3), and driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a); count 4).

For counts 1 through 3, the jury determined Craig personally inflicted great bodily injury (§ 12022.7, subd. (e)).

Craig waived a jury trial of his prior convictions and aggravating factors. The court found he had suffered convictions for criminal threats (§ 422) and arson (§ 451), and further found these convictions amounted to strikes under the Three Strikes law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)). The court found several other aggravating factors true as well.

Accounting for Craig's strikes and enhancements, the court imposed a total prison sentence of 14 years, plus 50 years to life.

## II

On appeal, Craig first claims prosecutorial misconduct requires the reversal of count 1, the count for willfully inflicting

3

corporal injury on a dating partner and causing a traumatic condition.

We assume error and find, under any standard of prejudice, the challenged comment by the prosecutor was harmless.

We explain.

Craig complains of one sentence in the prosecution's closing argument. When addressing count 1, the prosecutor highlighted some of Craig's violence against Johnson, the objects he used to beat her, and the severe injuries she sustained. Then the prosecutor encouraged the jury to reject a lesser included offense. The prosecutor said, with our emphasis: "Now by law the Court does have to give a lesser crime instruction. And it's simple battery. Simple battery doesn't -- *in my opinion it does not even come close to describing what happened to this woman.* Simple battery can be anything --"

Defense counsel objected, and the court struck the words "in my opinion." The prosecutor went on to describe simple battery.

Craig argues the prosecutor, through the italicized remark, improperly proffered her opinion of his guilt in violation of California law and his constitutional rights, and no curative instruction could rectify this wrong.

The prosecutor's remark was harmless under any standard. (See *People v. Peoples* (2016) 62 Cal.4th 718, 798–799 (*Peoples*) [applying the typical standard of *People v. Watson* (1956) 46 Cal.2d 818 to prosecutorial error]; *People v. Powell* (2018) 5 Cal.5th 921, 952, fn. 8 [applying *Chapman v. California* (1967) 386 U.S. 18 to defendant's due process challenge to an evidentiary ruling].)

4

The prosecutor's remark was fleeting. "In general, we will not find brief, passing comments by the prosecutor to be prejudicial." (*People v. Ghobrial* (2018) 5 Cal.5th 250, 289.)

Defense counsel objected to the remark, and the court immediately struck the objectionable part and cured any inappropriate vouching. The court also instructed the jurors that counsel's remarks are not evidence and that their verdict must be based only on the trial evidence and the law. We presume the jurors followed these instructions. (*Peoples*, *supra*, 62 Cal.4th at p. 799.)

Finally, the evidence of Craig's guilt on count 1 was overwhelming.

Johnson testified Craig erupted after seeing the text message on her phone. They were in her truck at the time, and she tried to run away. Craig "came at" her and punched her three or four times in the face. He grabbed a wrench from the truck bed and repeatedly hit her ribs. He kept hitting and kicking her in the ribs, chest, and face while she lay on the ground. Then he got back in the truck and aimed for her.

Craig eventually forced Johnson into the truck and continued the abuse at his home. He punched "every part" of her, hit her with a broomstick, bit her, and spit on her more times than she could count. He smashed glass around the home. He ignored her pleas to stop and let her go.

At one point, Craig made Johnson eat dog food, telling her she was "lower than a piece of shit." Later, he threatened to kill her. He pulled out a handgun and gave her the choice between a bullet to the head or a fentanyl overdose. She chose the latter, and Craig approached her with a syringe. He ended up shooting

the drugs into her mouth—a mix of methamphetamine and fentanyl—which put her to sleep.

Craig continued the abuse over two days.  He strangled her.  He threw her to the ground by the hair.  He kicked her on the side of the head.  He struck her in the chest many times, making it hard for her to breathe.  He would wake her by throwing full soda cans at her.

At one point, Craig made Johnson go to his friends' house, even though she could not lift her arms to put on a shirt and had trouble breathing.  There, he tried to convince his friends to help him kill and bury her.

Eventually, Johnson persuaded Craig to get cigarettes and food.  When they were out, she was able to flag down help and call 911 at a Dollar General store.  The man who helped Johnson testified she was barefoot and bruised and asked for help.  Meanwhile, Craig drove off in Johnson's truck.

Sheriff's deputies later found Craig in this truck.  It contained, among other things, a bag of methamphetamine, a syringe, Johnson's cell phone, firearm parts, and a metal wrench.

One deputy who came to the store testified Johnson was "very distraught" and upset there.  Her eyes were swollen and purple, and she had red marks on her face.  She was hunched over and unable to stand on her own.  Johnson reported some of what happened and described the extreme pain in her midsection.  She said she feared Craig would come after her for the rest of her life for "doing this."

Johnson spent 10 days in the hospital.  Nearly all of her ribs were broken.  She had ligament injury to her cervical spine.  Both of her lungs had collapsed.  She had to have spinal fusion surgery and tubes placed in her chest to reinflate her lungs.  She

had bruising from head to toe. A forensic nurse testified about the subconjunctival hemorrhage and ruptured blood vessels on Johnson's eyes, head, and upper back—signaling blunt force trauma injury and/or strangulation.

Craig's text messages dispelled any skepticism of Johnson's story. Shortly before his most recent string of violence, Craig had texted Johnson the following:

"Okay, you want it you've got it. I've done two prison terms over you stupid fucking bitches. One thing I've learned is how to avoid it in the future. You enjoy the very expensive roller coaster ride you are getting into. Have fun. LOL."

"Let's see how bad and a man your new boyfriend is when I fuck you up right in front of him. I'll have the pleasure in trashing him as well[.]"

"I already know you will be calling the cops, the last two did so I'm ready for that as well. This time, I will hold court in the middle of the streets, but not before I deal with this. You're part of the five percent of women who shouldn't be allowed to consume oxygen and put solid motherfuckers away. . . . You pushed me into a mode you will regret for the rest of your life. If it's costing me my life, you can bet you are paying dearly, bitch. At the least I have nothing to lose and don't give a fuck, so bring or call anyone you want. I'll do this single handed and see how far I get."

The evidence against Craig on count 1 was overwhelming. The passing remark by the prosecutor of which Craig complains did not affect the verdict or render the trial unfair. (See *Peoples*, *supra*, 62 Cal.4th at p. 799; *People v. Seumanu* (2015) 61 Cal.4th 1293, 1344–1345 [prosecutor's remarks encouraging the jury to identify with the victim were harmless and did not violate

defendant's constitutional rights, given the trial court's instructions and the strong evidence of guilt].)

Craig's citations underscore this conclusion. (E.g., *Berger v. United States* (1935) 295 U.S. 78, 88–89 [assuming prejudice to the defendant where the case against him was weak and the prosecutor's misconduct was "pronounced and persistent," not "slight or confined to a single instance"]; *People v. Allen* (1978) 77 Cal.App.3d 924, 934–935, citation omitted ["It is only in the exceptional case that 'the improper subject matter is of such a character that its effect … cannot be removed by the court's admonitions' "].)

### III

Craig's second appellate contention lacks merit.

He argues the trial court did not actually find that his prior convictions amounted to serious felonies under section 667, subdivision (a)(1) (section 667(a)(1)). Thus, he claims, imposing two five-year enhancements under this provision generated an unauthorized sentence.

*People v. Clair* (1992) 2 Cal.4th 629 (*Clair*) leaves no room for this argument. Our high court dismissed a claim mirroring Craig's, finding there was no reason to vacate the defendant's serious felony enhancement after a bench trial on the prior conviction. *Clair* reasoned the trial court "impliedly—but sufficiently—rendered a finding of true as to the [section 667(a)(1)] allegation when it imposed an enhancement *expressly* for the underlying prior conviction." (*Id.* at pp. 645 & 691, fn. 17.)

Craig's amended information alleged the same prior convictions amounted to strikes and serious felonies under section 667(a)(1). Before trial, the court acknowledged the

8

prosecution sought to use the same convictions to enhance Craig's sentence under both laws.

In the bench trial of Craig's prior convictions, the court considered the prosecution's evidence and found beyond a reasonable doubt that he had sustained two convictions for criminal threats and one for arson, all of which amounted to "strike priors."

The court sentenced Craig at the same hearing. It imposed consecutive five-year enhancements under section 667(a)(1), saying "the court is sentencing [Craig] to five years as to both, consecutive to one another as to both 667(a)(1) allegations." In response to a question by defense counsel, the court repeated Craig was getting "ten years on the 667(a)'s." Both the minute order and the abstract of judgment show the court imposed these enhancements.

Craig relies on a single, distinguishable case that does not help him, *People v. Farias* (2023) 92 Cal.App.5th 619. *Farias* involved uncertainty about strike allegations. No reporter's transcript documented the trial court's findings on the defendants' priors; the findings were not made in the presence of the parties or counsel; the related minute order was silent as to the strike allegations; the court referenced only "serious" priors (not "strike" or "violent" priors) at sentencing; and the abstracts of judgment were contradictory. (*See id.* at pp. 626, 630–635.)

There was no uncertainty here.

The trial court was not silent on Craig's prior convictions. It found these convictions beyond a reasonable doubt and explicitly imposed five-year serious felony enhancements under the relevant provision. These enhancements are documented in

9

the reporter's transcript, the related minute order, and the abstract of judgment.

This suffices. (See *Clair*, *supra*, 2 Cal.4th at p. 691, fn. 17; see also *People v. Williams* (2002) 99 Cal.App.4th 696, 699–701 [trial court impliedly found a defendant's prior conviction was for a serious felony when it imposed a five-year prison term under section 667(a)(1)]; *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1048–1051 [trial court impliedly found true a firearm allegation "because it imposed a 10-year prison term for the enhancement. We reject appellant's contention that the absence of an express finding requires that the 10-year enhancement be stricken . . . . Here the record is not 'silent' as the oral pronouncement of judgment 'speaks' to impliedly affirm the truth of the use of a firearm allegation"].)

## DISPOSITION

We affirm the judgment.

WILEY, J.

We concur:

STRATTON, P. J.

VIRAMONTES, J.

10